UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x          **Case No. 13-44999**

In Re:

**Ashand Enterprises, Inc.**

                                         Chapter 11

**Debtor,**
--------------------------------------------------------------x


### NOTICE OF MOTION


PLEASE TAKE NOTICE that upon the annexed application of Karen
Veeraswamy, the Creditor, a hearing will be held before the Hon. Carla E.
Craig, Bankruptcy Judge, on 18th day of December, 2013 at 2 pm in
Courtroom 3529, U.S Bankruptcy Court, 271-C Cadman Plaza East,
Brooklyn, to consider the Creditor's motion for an Order granting relief as
follows; appointing The United States Trustee to sell the Debtor's property.


On this 26th of November    , 2013

KAREN VEERASWAMY (PRO SE)
6337 FOREST AVE, APT #1R
RIDGEWOOD, NY 11385
TEL: (917)717-2396
Email: ammasami@gmail.com

RECEIVED

2013 NOV 26  P 12:50

CLERK
BANKRUPTCY COURT
IN DISTRICT OF
NEW YORK

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x          **Case No. 13-44999**
In Re:

**Ashand Enterprises, Inc.**

Chapter 11

**Debtor,**
-------------------------------------------------------x

# APPLICATION IN SUPPORT OF MOTION

To the Hon. Carla E. Craig,

I, Karen Veeraswamy, Creditor, herein makes this application in support of my motion for the following relief; appointing The United States Trustee to sell the Debtor's Property.
In support of my motion, I hereby affirm the following:

1. On August 14, 2013, the Debtor, Ashand Enterprises, Inc. filed a petition seeking an Order for relief under the protective provisions of Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

2. The Debtor is a corporation that owns as its sole asset one-piece of real property located at 1114 Ward Avenue, Bronx, NY (the "Property"). The Debtor has its principal office at 86-48 122 Street, Richmond Hill, NY.

3. V. Veeraswamy is President of Ashand Enterprises, Inc. (DEBTOR)

PAGE-ONE

## VAAK PROPERTIES, LLC

4. V.Veeraswamy is also the President of VAAK Properties, LLC (Exhibit A)

5. VAAK properties liquidated its property for $6 million in 2011.

6. Attached is the Decision/Order from The Supreme Court, Appellate Division, First Department, regarding VAAK Properties' "steadfast refusal to pay a validly earned broker's fee" (Exhibit B)

## CREDIBILITY AND INTEGRITY

7. V.Veeraswamy is lacking credibility and integrity to conduct transactions relating to the Debtor Ashand Enterprises, Inc.

8. The Debtor's Operating Report has not yet been filed for November 2013

9. The Debtor, few weeks ago, found Besen & Associates to be qualified and able to sell the Debtor's property. But now want to employ Itzhaki Properties.

10. This Creditor believes that there is something more to it than just change of different Real Estate Agent.

## DEBTOR'S WORDS AND ACTIONS IS NOT MATCHING

10. For the past year, V.Veeraswamy has been talking about selling the Debtor's property and about all the offers and the sales contract "about to be signed". No selling of property has materialized yet.

11. Motivation of the V.Veeraswamy to sell the Debtor's property is questionable.

12. Ashand Enterprises, Inc. (Debtor) is a profitable business.

13. In early 2013, in Supreme Court, Queens County, V.Veeraswamy filed papers claiming an income of around $10,000 per year, and requesting a downward modification of domestic obligation support.

PAGE-TWO

14. To corroborate his position of "no money", V.Veeraswamy stopped/delayed the payments that were due on Debtor's property.

15. That led to filing of foreclosure procedures on Debtor's property and Appointment of Receiver by New York Supreme Court, Bronx County.

16. The Debtor filed this petition for Chapter 11 just to circumvent the appointment of property Receiver, and claiming distress for the property, when it fact, the Debtor's property is generating/able to generate cash flow to make all the payments and have a positive cash reserve.

Wherefore Creditor prays for an Order granting relief requested.

Respectfully Submitted,

On this 26 day of November 2013.

_Karen Veeraswamy_

KAREN VEERASWAMY (PRO SE)
6337 FOREST AVE, APT #1R
RIDGEWOOD, NY 11385
TEL: (917)717-2396
Email: ammasami@gmail.com

PAGE-THREE

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Notice of Motion and Application in Support of Motion was on parties of record this 26th day of November, 2013.

Bruce Bronson
61-43 186 Street
Fresh Meadows, NY 11365

McCarter and English LLP
Four Gateway Center
100 Mulberry St.
Newark, NJ 07102

United States Trustee,
Eastern District New York (Brooklyn Office)
US Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014

_Karen Veeraswamy_

KAREN VEERASWAMY
6337 FOREST AVE, APT # 1R
RIDGEWOOD, NY, 11386
TEL: (917)717-2396
ammasami@gmail.com

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through November 22, 2013.

Selected Entity Name: VAAK PROPERTIES, LLC
Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | VAAK PROPERTIES, LLC |
| **DOS ID #:** | 3326574 |
| **Initial DOS Filing Date:** | FEBRUARY 28, 2006 |
| **County:** | QUEENS |
| **Jurisdiction:** | NEW YORK |
| **Entity Type:** | DOMESTIC LIMITED LIABILITY COMPANY |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
VAAK PROPERTIES, LLC
86-48 192 STREET
RICHMOND HILL, NEW YORK, 11418

**Registered Agent**
VELAPPAN VEERASWAMY - PRESIDENT
86-48 122 STREET
RICHMOND HILL, NEW YORK, 11418

This office does not require or maintain information regarding the names and addresses of members or managers of nonprofessional limited liability companies. Professional limited liability companies must include the name(s) and address(es) of the original members, however this information is not recorded and only available by

**\*Stock Information**

EXHIBIT A

Saxe, J.P., Catterson, Moskowitz, Acosta, Renwick, JJ.

6403        Sioni & Partners, LLC,                    Index 652414/10
                Plaintiff-Respondent,

                        -against-

        Vaak Properties, LLC,
                Defendant-Appellant,

        Kaiko Chan, etc.,
                Defendant.

        _____

Howard R. Birnbach, Great Neck, for appellant.

Steven Landy & Associates, PLLC, New York (David A. Wolf of
counsel), for respondent.

        _____

        Judgment, Supreme Court, New York County (Manuel J. Mendez,

J.), entered August 5, 2011, awarding plaintiff the total sum of

$168,402.60, unanimously affirmed, with costs.

        The facts of this case are relatively straightforward,

especially defendant Vaak Properties, LLC's steadfast refusal to

pay a validly earned broker's fee.  On June 4, 2010, plaintiff real

estate broker and Vaak Properties entered into an "exclusive right

to sell agreement."  The agreement gave plaintiff the exclusive

right to sell the property, located at 1135 Boynton Aveue, Bronx,

New York, at a price of $6.6 million, with a 3% commission.  The

agreement stated, among other things, "If the broker is able and

willing to sell the property at an agreed price, commission of 3%

41



will be paid to the broker." The agreement also stated that "[i]n the event that the price is negotiated and agreed by the seller, the commission also will be negotiated." This agreement was "valid for 3 months, until September 4, 2010."

Thereafter, plaintiff procured a buyer, who made an offer of $6 million. Plaintiff communicated the buyer's offer to defendant and defendant accepted. Because the buyer's offer was less than the original $6.6 million asking price, defendant and plaintiff entered into a new contract ("Amended Commission Agreement"), on September 2, 2010, in accordance with the original listing agreement. This Amended Commission Agreement stated, in pertinent part:

> "The following constitutes and *confirms* our agreement regarding the proposed sale of the above referenced property . . .
>
> "In connection with the proposed contract of purchase and sale, you agree to pay us, and we agree to accept, as compensation for our services as brokers the sum of $160,000 (one hundred and sixty thousand dollars) as compensation, if as and only when title closes.
>
> "We hereby represent that we are duly licensed real estate brokers in the State of New York and you acknowledge that [plaintiff] is the broker responsible for the sale of the property (emphasis added)."

Both plaintiff and defendant signed this Amended Commission Agreement. However, above the line for defendant's signature was

42

handwritten: "subject to attorney modifications & approval."

The next day, September 3, 2010, defendant and the buyer entered into a contract for sale of the property.  Section 14.01 of the contract states, among other things:

> "If a broker is specified in Schedule D, Seller and Purchaser mutually represent and warrant that such broker is the only broker with whom they have dealt in connection with this contract and that neither Seller nor Purchaser knows of any other broker who has claimed or may have a right to claim a commission in connection with this transaction, unless otherwise indicated in Schedule D.  The commission of such broker shall be paid pursuant to separate agreement by the party specified in Schedule D."

According to plaintiff, and unchallenged by defendant, the only broker listed in Schedule D is plaintiff.  It is also clear that the only party with whom plaintiff had a "separate agreement" to be paid a commission was defendant.

Over three months later, on December 20, 2010, defendant's principal wrote to plaintiff, indicating that "[t]he attorney has approved $100,000, instead of $160,000, which will be paid at the time of closing."  Although the sale closed on January 21, 2011, for the price of $6 million, and despite demands by plaintiff for its brokerage commission, defendant never paid any commission.

On or about December 28, 2010, plaintiff commenced this action, seeking the $160,000 commission agreed to in the Amended

43

Commission Agreement.  Defendant responded, asserting that the payment of a commission "was conditional and the condition was not satisfied," and that "plaintiff was not the procuring cause of the transaction."

On or about April 13, 2011, plaintiff moved for summary judgment, asserting, essentially, that it actively marketed the building, and that the Amended Commission Agreement clearly stated that plaintiff was the procuring cause of the sale, as did the contract of sale.  Moreover, even if the Amended Commission Agreement was unenforceable, the exclusive right to sell agreement would govern, entitling plaintiff to a 3% commission, which would be $180,000.  Plaintiff also submitted the affidavit of an officer of the buyer, who averred that he learned that the building was for sale through plaintiff, and that the buyer made the offer as a result of plaintiff's efforts.

In response to plaintiff's summary judgment motion, defendant asserted that there was no evidence that defendant's attorney ever approved the Amended Commission Agreement (although it did not pursue this argument on appeal).  Defendant argues on appeal that because the Amended Commission Agreement superseded the exclusive right to sell agreement, plaintiff has the burden of showing that he was the procuring cause of the sale.  According to defendant,

44

plaintiff has not met its burden, because plaintiff did not attend three face-to-face meetings between buyer and defendant, which took place after the Amended Commission Agreement was executed; defendant asserts that the "only thing plaintiff brought about was the purchase price." (These three meetings took place after the sales price was agreed to.)

In order for a real estate broker to demonstrate that he or she was the procuring cause of a transaction, the broker must demonstrate a direct and proximate link between the bare introduction [of buyer and seller] and the consummation [of sale] (*Greene v Hellman* 51 NY2d 197, 206 [1980]). Plaintiff's, the buyer's, and even defendant's testimony clearly demonstrate that plaintiff was the procuring cause of the sale. The buyer's affidavit states that he purchased the property "as a direct result" of plaintiff's efforts, and the Amended Commission Agreement contains an acknowledgment by defendant that plaintiff "is the broker responsible for the sale of the property." Additionally, the contract of sale also contains an acknowledgement, in Schedule D, that plaintiff was the only broker with which either defendant or buyer had dealt, and states that the commission "shall be paid pursuant to separate agreement by the party specified in Schedule D [defendant]." That "separate

45

agreement" is the Amended Commission Agreement, and this acknowledgment in the contract of sale is an admission of plaintiff's right to its commission (*see Helmsley-Spear, Inc. v New York Blood Ctr.*, 257 AD2d 64 [1999]; *May Co. v Monoco Assoc.*, 80 AD2d 798 [1981]).

The court properly determined that plaintiff was entitled to the commission of $160,000 on the sale of the property. Plaintiff and defendant entered into an exclusive right to sell agreement, which expressly anticipated that, "[i]n the event the price is negotiated and agreed by the seller, the commission will also be negotiated." Prior to the expiration of this exclusive agreement, plaintiff negotiated a price with the purchaser, which defendant accepted, and plaintiff and defendant entered into an amended commission agreement, whereby defendant agreed to pay and plaintiff agreed to accept $160,000 as the commission. This amended agreement was not a new listing agreement that superseded the exclusive listing agreement; it was simply an agreement as to the amount of commission that plaintiff had already earned and was perfectly consistent with the exclusive right to sell agreement. Moreover, the Amended Commission Agreement expressly stated that defendant acknowledged that plaintiff was the procuring cause of the sale of the property and that the commission was contingent

46

only on the closing of the sale, which ultimately occurred.

Plaintiff not only called the property to the buyer's attention and introduced the buyer to defendant, it also provided information about the property to the buyer, arranged for the buyer to visit the property, and brought about the ultimate purchase price.  Thus, plaintiff was entitled to its commission, without the need to prove it was the procuring cause of the sale, since a broker with an exclusive right to sell need not show that it was the procuring cause of the sale (*see Rachmani Corp. v 9 E. 96th St. Apt. Corp.*, 211 AD2d 262, 268 [1995]) ["an exclusive right to sell agreement entitles the broker to receive a commission on a sale to any purchaser, whether or not the broker played a part in the negotiations"]).  In any event, both the contract of sale and the Amended Commission Agreement expressly establish that plaintiff was the procuring cause.

THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED: MARCH 1, 2012

_____
CLERK

47