# Exhibit A

Contract of Sale for New York office, commercial and multi-family residential premises

## Contract of Sale—Office, Commercial and Multi-Family Residential Premises

### Table of Contents

Schedule A.  Description of premises (to be attached)
Schedule B.  Permitted exceptions
Schedule C.  Purchase price
Schedule D.  Miscellaneous
Schedule E.  Rent schedule (to be attached)
Section 1.  Sale of premises and acceptable title
Section 2.  Purchase price, acceptable funds, existing mortgages, purchase money mortgage and escrow of downpayment
Section 3.  The closing
Section 4.  Representations and warranties of seller
Section 5.  Acknowledgments of purchaser
Section 6.  Seller's obligations as to leases
Section 7.  Responsibility for violations

Section 8.  Destruction, damage or condemnation
Section 9.  Covenants of seller
Section 10.  Seller's closing obligations
Section 11.  Purchaser's closing obligations
Section 12.  Apportionments
Section 13.  Objections to title, failure of seller or purchaser to perform and
Section 14.  Broker
Section 15.  Notices
Section 16.  Limitations on survival of representations, warranties, covenants and other obligations
Section 17.  Miscellaneous provisions
Signatures and receipt by escrowee

CONTRACT dated DECEMBER                    2013

between    ASHAND ENTERPRISES INC.    86-48 122nd Street, Richmond Hill, NY 11418

("Seller") and    Ellis Equities LLC, 31-10 37th Avenue, Long Island City, NY 11101

("Purchaser").

Seller and Purchaser hereby covenant and agree as follows:

### Schedule A
### DESCRIPTION OF PREMISES

The Premises are located at or known as
1114 WARD AVENUE, BRONX, NY

Tax Map Designation:
Section:              , Block: 3742          , Lot: 5

(☐ metes and bounds description attached hereto)

### Schedule B
### PERMITTED EXCEPTIONS

1. Zoning regulations and ordinances which are not violated by the existing structures or present use thereof and which do not render title uninsurable.

2. Consents by the Seller or any former owner of the Premises for the erection of any structure or structures on, under or above any street or streets on which the Premises may abut.

3. The Existing Mortgage(s) and financing statements, assignments of leases and other collateral assignments ancillary thereto.

4. Leases and Tenancies specified in the Rent Schedule and any new leases or tenancies not prohibited by this contract.

5. Unpaid installments of assessments not due and payable on or before the Closing Date.

6. Financing statements, chattel mortgages and liens on personalty filed more than 5 years prior to the Closing Date and not renewed, or filed against property or equipment no longer located on the Premises or owned by Tenants.

7.      (a)       Rights of utility companies to lay, maintain install and repair pipes, lines, poles, conduits, cable boxes and related equipment on, over and under the Premises, provided that none of such rights imposes any monetary obligation on the owner of the Premises.

(b) Encroachments of stoops, areas, cellar steps, trim cornices, lintels, window sills, awnings, canopies, ledges, fences, hedges, coping and retaining walls projecting from the Premises over any street or highway or over any adjoining property and encroachments of similar elements projecting from adjoining property over the Premises.

(c) Revocability or lack of right to maintain vaults, coal chutes, excavations or sub-surface equipment beyond the line of the Premises.

(d) Any state of facts that an accurate survey would disclose, provided that such facts do not render title unmarketable. For the purposes of this contract, none of the facts shown on the survey, if any, identified below shall be deemed to render title unmarketable, and Purchaser shall accept title subject thereto:

### Schedule C
### PURCHASE PRICE

The Purchase Price shall be paid as follows:

(a) By check subject to collection, the receipt of which is hereby acknowledged by Seller: $ 760,000.00

(b) By check or checks delivered to Seller at the Closing in accordance with the provisions of §2.02: $ 6,840,000.00

(c) By acceptance of title subject to the following Existing Mortgage(s):

(d) By execution and delivery to Purchaser or its assignee of a note secured by a
Purchase Money Mortgage on the Premises, in the sum of        $ 0
payable as follows:

Making for a total Purchase Price of:        $7,600,000.00

### Schedule D
### MISCELLANEOUS

1. Title insurer designated by the parties (§1.02):   ANY NEW YORK TITLE AGENCY

2. Last date for consent by Existing Mortgagee(s) (§2.03(b)):   N/A

3. Maximum Interest Rate of any Refinanced Mortgage (§2.04(b)):   N/A

4. Prepayment Date on or after which Purchase Money Mortgage may be prepaid (§2.04(c)):   N/A

5. Seller's tax identification number(s) (§2.05):

6. Purchaser's tax identification number(s) (§2.05):   *About*

7. Scheduled time and date of Closing (§3.01): ON OR ~~BEFORE~~ 60 DAYS

8. Place of Closing (§3.01):   SELLER'S COUNSEL

9. Assessed valuation of Premises (§4.10):

10. Fiscal year and annual real estate taxes on Premises (§4.10):

11. Tax abatements or exemptions affecting Premises (§4.10):

12. Assessments on Premises (§4.13):

13. Maximum Amount which Seller must spend to cure violations, etc. (§7.02):

14. Maximum Expense of Seller to cure title defects, etc. (§13.02):   $5,000.00

15. Broker, if any (§14.01) ~~THE ZOE REAL ESTATE~~ *The ZOE Consulting Real Estate LLC*

16. Party to pay broker's commission (§14.01):   SELLERS

17. Address for notices (§15.01):

If to Seller:   KAIKO CHAN , ESQ
86-16 QUEENS BLVD SUITE 201
ELMHURST, NY 11373

with a copy to:

If to Purchaser:

with a copy to:

18. Limitation Date for actions based on Seller's surviving representations and other obligations (§16.01):

19. Additional Schedules or Riders (§17.07):

### Schedule E
### RENT SCHEDULE

(☐ if checked, annexed hereto)

2

**Section 1. Sale of Premises and Acceptable Title**

§1.01. Seller shall sell to Purchaser, and Purchaser shall purchase from Seller, at the price and upon the terms and conditions set forth in this contract:

(a) the parcel of land more particularly described in Schedule A attached hereto ("Land");

(b) all buildings and improvements situated on the Land (collectively, "Building");

(c) all right, title and interest of Seller, if any, in and to the land lying in the bed of any street or highway in front of or adjoining the Land to the center line thereof and to any unpaid award for any taking by condemnation or any damage to the Land by reason of a change of grade of any street or highway;

(d) the appurtenances and all the estate and rights of Seller in and to the Land and Building; and

(e) all right, title and interest of Seller, if any, in and to the fixtures, equipment and other personal property attached or appurtenant to the Building (collectively, "Premises"). The Premises are located at or known as 1114 WARD AVENUE, BRONX, NY

Tax Map Designation:
Section:         , Block: 3742    , Lot:  5

§1.02. Seller shall convey and Purchaser shall accept fee simple title to the Premises in accordance with the terms of this contract, subject only to:

(a) the matters set forth in Schedule B attached hereto (collectively, "Permitted Exceptions"); and

(b) such other matters as (i) the title insurer specified in Schedule D attached hereto (or if none is so specified, then any member of the New York Board of Title Underwriters) shall be willing, without special premium, to omit as exceptions to coverage or to except with insurance against collection out of or enforcement against the Premises and (ii) shall be accepted by any lender described in Section 274-a of the Real Property Law ("Institutional Lender") which has committed in writing to provide mortgage financing to Purchaser for the purchase of the Premises ("Purchaser's Institutional Lender"), except that if such acceptance by Purchaser's Institutional Lender is unreasonably withheld or delayed, such acceptance shall be deemed to have been given.

**Section 2. Purchase Price, Acceptable Funds, Existing Mortgages, Purchase Money Mortgage and Escrow of Downpayment**

§2.01. The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Premises as provided in Schedule C attached hereto is $  7,600,000.00

§2.02. All monies payable under this contract, unless otherwise specified in this contract, shall be paid by

(a) certified checks of Purchaser or any person making a purchase money loan to Purchaser drawn on any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York or

(b) official bank checks drawn by any such banking institution, payable to the order of Seller, except that uncertified checks of Purchaser payable to the order of Seller up to the amount of one-half of one percent of the Purchase Price shall be acceptable for sums payable to Seller at the Closing.

§2.03. (a) If Schedule C provides for the acceptance of title by Purchaser subject to one or more existing mortgages (collectively, "Existing Mortgage(s)"), the amounts specified in Schedule C with reference thereto may be approximate. If at the Closing the aggregate principal amount of the Existing Mortgage(s), as reduced by payments required thereunder prior to the Closing, is less than the aggregate amount of the Existing Mortgage(s) as specified in Schedule C, the difference shall be added to the monies payable at the Closing, unless otherwise expressly provided herein.

(b) If any of the documents constituting the Existing Mortgage(s) or the note(s) secured thereby prohibits or restricts the conveyance of the Premises or any part thereof without the prior consent of the holder or holders thereof ("Mortgagee(s)") or confers upon the Mortgagee(s) the right to accelerate payment of the indebtedness or to change the terms of the Existing Mortgage(s) in the event that a conveyance is made without consent of the Mortgagee(s), Seller shall notify such Mortgagee(s) of the proposed conveyance to Purchaser within 10 days after execution and delivery of this contract, requesting the consent of such Mortgagee(s) thereto. Seller and Purchaser shall furnish the Mortgagee(s) with such information as may reasonably be required in connection with such request and shall otherwise cooperate with such Mortgagee(s) and with each other in an effort expeditiously to procure such consent, but neither shall be obligated to make any payment to obtain such consent. If such Mortgagee(s) shall fail or refuse to grant such consent in writing on or before the date set forth in Schedule D or shall require as a condition of the granting of such consent

(i) that additional consideration be paid to the Mortgagee(s) and neither Seller nor Purchaser is willing to pay such additional consideration or

(ii) that the terms of the Existing Mortgage(s) be changed and Purchaser is unwilling to accept such change, then unless Seller and Purchaser mutually agree to extend such date or otherwise modify the terms of this contract, Purchaser may terminate this contract in the manner provided in §13.02.

If Schedule C provides for a Purchase Money Mortgage (as defined in §2.04), Seller may also terminate this contract in the manner provided in §13.02 if any of the foregoing circumstances occur or if Seller is unwilling to accept any such change in the terms of the Existing Mortgage(s).

§2.04. (a) If Schedule C provides for payment of a portion of the Purchase Price by execution and delivery to Seller of a note secured by a purchase money mortgage ("Purchase Money Mortgage"), such note and Purchase Money Mortgage shall be drawn by the attorney for the Seller on the standard forms of the New York Board of Title Underwriters then in effect for notes and for mortgages of like lien, as modified by this contract. At the Closing, Purchaser shall pay the mortgage recording tax and recording fees therefor and the filing fees for any financing statements delivered in connection therewith.

(b) If Schedule C provides for the acceptance of title by Purchaser subject to Existing Mortgage(s) prior in lien to the Purchase Money Mortgage, the Purchase Money Mortgage shall provide that it is subject and subordinate to the lien(s) of the Existing Mortgage(s) and shall be subject and subordinate to any extensions, modifications, renewals, consolidations, substitutions or replacements thereof (collectively, "Refinancing" or "Refinanced Mortgage"), provided that (i) the rate of interest payable under a Refinanced Mortgage shall not be greater than that specified in Schedule D as the Maximum Interest Rate or, if no Maximum Interest Rate is specified in Schedule D, shall not be greater than the rate of interest that was payable on the refinanced indebtedness immediately prior to such Refinancing, and (ii)    if the principal amount of the Refinanced Mortgage plus the principal amount of other Existing Mortgage(s), if any, remaining after placement of a Refinanced Mortgage exceeds the amount of principal owing and unpaid on all mortgages on the Premises superior to the Purchase Money Mortgage immediately prior to the Refinancing, an amount equal to the excess shall be paid at the closing of the Refinancing to the holder of the Purchase Money Mortgage in reduction of principal payments due thereunder in inverse order of maturity. The Purchase Money Mortgage shall further provide that the holder thereof shall, on demand and without charge therefor, execute, acknowledge and deliver any agreement or agreements reasonably required by the mortgagee to confirm such subordination.

(c) The Purchase Money Mortgage shall contain the following additional provisions:

3

(i) "The mortgagor or any owner of the mortgaged premises shall have the right to prepay the entire unpaid indebtedness together with accred interest, but without penalty, at any time on or after [insert the day following the last day of the fiscal year of the mortgagee in which the Closing occurs or, if a Prepayment Date is specified in Schedule D, the specified Prepayment Date], on not less than 10 days' written notice to the holder hereof."

(ii) "Notwithstanding anything to the contrary contained herein, the obligation of the mortgagor for the payment of the indebtedness and for the performance of the terms, covenants and conditions contained herein and in the note secured hereby is limited solely to recourse against the property secured by this mortgage, and in no event shall the mortgagor or any principal of the mortgagor, disclosed or undisclosed, be personally liable for any breach of or default under the note or this mortgage or for any deficiency resulting from or through any proceedings to foreclose this mortgage, nor shall any deficiency judgment, money judgment or other personal judgment be sought or entered against the mortgagor or any principal of the mortgagor, disclosed or undisclosed, but the foregoing shall not adversely affect the lien of this mortgage or the mortgagee's right of foreclosure."

(iii) "In addition to performing its obligations under Section 274-a of the Real Property Law, the mortgagee, if other than one of the institutions listed in Section 274-a agrees that, within 10 days after written request by the mortgagor, but not more than twice during any period of 12 consecutive months, it will execute, acknowledge and deliver without charge a certificate of reduction in recordable form (a) certifying as to (1) the then unpaid principal balance of the indebtedness secured hereby, (2) the maturity date thereof, (3) the rate of interest, (4) the last date to which interest has been paid and (5) the amount of any escrow deposits then held by the mortgagee, and (b) stating, to the knowledge of the mortgagee, whether there are any alleged defaults hereunder and, if so, specifying the nature thereof."

(iv) "All notices required or desired to be given under this mortgage shall be in writing and shall be delivered personally or shall be sent by prepaid registered or certified mail, addressed to the mortgagor and mortgagee at the addresses specified in this mortgage or to such other parties or at such other addresses, not exceeding two, as may be designated in a notice given to the other party or parties in accordance with the provisions hereof."

(v) The additional provisions, if any, specified in a rider hereto.

§2.05. (a) If the sum paid under paragraph (a) of Schedule C or any other sums paid on account of the Purchase Price prior to the Closing (collectively, "Downpayment") are paid by check or checks drawn to the order of and delivered to Seller's attorney or another escrow agent ("Escrowee"), the Escrowee shall hold the proceeds thereof in escrow in a special bank account (or as otherwise agreed in writing by Seller, Purchaser and Escrowee) until the Closing or sooner termination of this contract and shall pay over or apply such proceeds in accordance with the terms of this section. Escrowee need not hold such proceeds in an interest-bearing account, but if any interest is earned thereon, such interest shall be paid to the same party entitled to the escrowed proceeds, and the party receiving such interest shall pay any income taxes thereon. The tax identification numbers of the parties are either set forth in Schedule D or shall be furnished to Escrowee upon request. At the Closing, such proceeds and the interest thereon, if any, shall be paid by Escrowee to Seller. If for any reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written objection from the other party to the proposed payment within 10 business days after the giving of such notice, Escrowee is hereby authorized to make such payment. If Escrowee does receive such written objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this contract or a final judgment of a court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest thereon, if any, with the

clerk of the Supreme Court of the county in which the Land is located. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this contract or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee has acknowledged agreement to these provisions by signing in the place indicated on the signature page of this contract.

### Section 3. The Closing

§3.01. Except as otherwise provided in this contract, the closing of title pursuant to this contract ("Closing") shall take place on the scheduled date and time of closing specified in Schedule D (the actual date of the Closing being herein referred to as "Closing Date") at the place specified in Schedule D.

### Section 4. Representations and Warranties of Seller

Seller represents and warrants to Purchaser as follows:

§4.01. Unless otherwise provided in this contract, Seller is the sole owner of the Premises.

§4.02. If the Premises are encumbered by an Existing Mortgage(s), no written notice has been received from the Mortgagee(s) asserting that a default or breach exists thereunder which remains uncured and no such notice shall have been received and remain uncured on the Closing Date. If copies of documents constituting the Existing Mortgage(s) and note(s) secured thereby have been exhibited to and initialed by Purchaser or its representative, such copies are true copies of the originals and the Existing Mortgage(s) and note(s) secured thereby have not been modified or amended except as shown in such documents.

§4.03. The information concerning written leases (which together with all amendments and modifications thereof are collectively referred to as "Leases") and any information concerning the Premises not arising out of the Leases (collectively, "Tenancies") set forth in Schedule E attached hereto ("Rent Schedule") is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof, and there are no Leases or Tenancies of any space in the Premises other than those set forth therein and any subleases or subtenancies. Except as otherwise set forth in the Rent Schedule or elsewhere in this contract:

(a) all of the Leases are in full force and effect and none of them has been modified, amended or extended;

(b) no renewal or extension options have been granted to tenants;

(c) no tenant has an option to purchase the Premises;

(d) the rents set forth in Schedule E are being collected on a current basis and there are no arrearages in excess of one month;

(e) no tenant is entitled to rental concessions or abatements for any period subsequent to the scheduled date of closing;

(f) Seller has not sent written notice to any tenant claiming that such tenant is in default, which default remains uncured;

2

(g) no action or proceeding instituted against Seller by any tenant of the Premises is presently pending in any court, except with respect to claims involving personal injury or property damage which are covered by insurance; and

(h) there are no security deposits other than those set forth in the Rent Schedule.

If any Leases which have been exhibited to and initialed by Purchaser or its representative contain provisions that are inconsistent with the foregoing representations and warranties, such representations and warranties shall be deemed modified to the extent necessary to eliminate such inconsistency and to conform such representations and warranties to the provisions of the Leases.

§4.04. If the Premises or any part thereof are subject to the New York City Rent Stabilization Law, Seller is and on the Closing Date will be a member in good standing of the Real Estate Industry Stabilization Association, and, except as otherwise set forth in the Rent Schedule, there are no proceedings with any tenant presently pending before the Conciliation and Appeals Board in which a tenant has alleged an overcharge of rent or diminution of services or similar grievance, and there are no outstanding orders of the Conciliation and Appeals Board that have not been complied with by Seller.

§4.05. If the Premises or any part thereof are subject to the New York City Emergency Rent and Rehabilitation Law, the rents shown are not in excess of the maximum collectible rents, and, except as otherwise set forth in the Rent Schedule, no tenants are entitled to abatements as senior citizens, there are no proceedings presently pending before the rent commission in which a tenant has alleged an overcharge of rent or diminution of services or similar grievance, and there are no outstanding orders of the rent commission that have not been complied with by Seller.

§4.06. If an insurance schedule is attached hereto, such schedule lists all insurance policies presently affording coverage with respect to the Premises, and the information contained therein is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof.

§4.07. If a payroll schedule is attached hereto, such schedule lists all employees presently employed at the Premises, and the information contained therein is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof, and, except as otherwise set forth in such schedule, none of such employees is covered by a union contract and there are no retroactive increases or other accrued and unpaid sums owed to any employee.

§4.08. If a schedule of service, maintenance, supply and management contracts ("Service Contracts") is attached hereto, such schedule lists all such contracts affecting the Premises, and the information set forth therein is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof.

§4.09. If a copy of a certificate of occupancy for the Premises has been exhibited to and initialed by Purchaser or its representative, such copy is a true copy of the original and such certificate has not been amended, but Seller makes no representation as to compliance with any such certificate.

§4.10. The assessed valuation and real estate taxes set forth in Schedule D, if any, are the assessed valuation of the Premises and the taxes paid or payable with respect thereto for the fiscal year indicated in such schedule. Except as otherwise set forth in Schedule D, there are no tax abatements or exemptions affecting the Premises.

§4.11. Except as otherwise set forth in a schedule attached hereto, if any, if the Premises are used for residential purposes, each apartment contains a range and a refrigerator, and all of the ranges and refrigerators and all of the items of personal property (or replacements thereof) listed in such schedule, if any, are and on the Closing Date will be owned by

Seller free of liens and encumbrances other than the lien(s) of the Existing Mortgage(s), if any.

§4.12. Seller has no actual knowledge that any incinerator, boiler or other burning equipment on the Premises is being operated in violation of applicable law. If copies of a certificate or certificates of operation therefor have been exhibited to and initialed by Purchaser or its representative, such copies are true copies of the originals.

§4.13. Except as otherwise set forth in Schedule D, Seller has no actual knowledge of any assessment payable in annual installments, or any part thereof, which has become a lien on the Premises.

## Section 5. Acknowledgments of Purchaser

Purchaser acknowledges that:

§5.01. Purchaser has inspected the Premises, is fully familiar with the physical condition and state of repair thereof, and, subject to the provisions of §7.01, §8.01, and §9.04, shall accept the Premises "as is" and in their present condition, subject to reasonable use, wear, tear and natural deterioration between now and the Closing Date, without any reduction in the Purchase Price for any change in such condition by reason thereof subsequent to the date of this contract.

§5.02. Before entering into this contract, Purchaser has made such examination of the Premises, the operation, income and expenses thereof and all other matters affecting or relating to this transaction as Purchaser deemed necessary. In entering into this contract, Purchaser has not been induced by and has not relied upon any representations, warranties or statements, whether express or implied, made by Seller or any agent, employee or other representative of Seller or by any broker or any other person representing or purporting to represent Seller, which are not expressly set forth in this contract, whether or not any such representations, warranties or statements were made in writing or orally.

## Section 6. Seller's Obligations as to Leases

§6.01. Unless otherwise provided in a schedule attached to this contract, between the date of this contract and the Closing, Seller shall not, without Purchaser's prior written consent, which consent shall not be unreasonably withheld:

(a) amend, renew or extend any Lease in any respect, unless required by law;

(b) grant a written lease to any tenant occupying space pursuant to a Tenancy; or

(c) terminate any Lease or Tenancy except by reason of a default by the tenant thereunder.

§6.02. Unless otherwise provided in a schedule attached to this contract, between the date of this contract and the Closing, Seller shall not permit occupancy of, or enter into any new lease for, space in the Building which is presently vacant or which may hereafter become vacant without first giving Purchaser written notice of the identity of the proposed tenant, together with

(a) either a copy of the proposed lease or a summary of the terms thereof in reasonable detail and

(b) a statement of the amount of the brokerage commission, if any, payable in connection therewith and the terms of payment thereof. If Purchaser objects to such proposed lease, Purchaser shall so notify Seller within 4 business days after receipt of Seller's notice if such notice was personally delivered to Purchaser, or within 7 business days after the mailing of such notice by Seller to Purchaser, in which case Seller shall not enter into the proposed lease. Unless otherwise provided in a schedule attached to this contract, Purchaser shall pay to Seller at the Closing, in the manner specified in §2.02, the rent and additional rent that would have been payable under the proposed lease from the date on which the tenant's obligation to pay rent would have commenced if Purchaser had not so objected until the Closing Date, less the amount of the brokerage commission specified in Seller's notice and the reasonable cost of decoration or other work required to be performed by the landlord under the terms of the proposed lease to suit the premises to the tenant's

3

occupancy ("Reletting Expenses"), prorated in each case over the term of the proposed lease and apportioned as of the Closing Date. If Purchaser does not so notify Seller of its objection, Seller shall have the right to enter into the proposed lease with the tenant identified in Seller's notice and Purchaser shall pay to Seller, in the manner specified in §2.02, the Reletting Expenses, prorated in each case over the term of the lease and apportioned as of the later of the Closing Date or the rent commencement date. Such payment shall be made by Purchaser to Seller at the Closing. In no event shall the amount so payable to Seller exceed the sums actually paid by Seller on account thereof.

§6.03. If any space is vacant on the Closing Date, Purchaser shall accept the Premises subject to such vacancy, provided that the vacancy was not permitted or created by Seller in violation of any restrictions contained in this contract. Seller shall not grant any concessions or rent abatements for any period following the Closing without Purchaser's prior written consent. Seller shall not apply all or any part of the security deposit of any tenant unless such tenant has vacated the Premises.

§6.04. Seller does not warrant that any particular Lease of Tenancy will be in force or effect at the Closing or that the tenants will have performed their obligations thereunder. The termination of any Lease or Tenancy prior to the Closing by reason of the tenant's default shall not affect the obligations of Purchaser under this contract in any manner or entitle Purchaser to an abatement of or credit against the Purchaser Price or give rise to any other claim on the part of Purchaser.

### Section 7. Responsibility for Violations

§7.01. Except as provided in §7.02 and §7.03, all notes or notices of violations of law or governmental ordinances, orders or requirements which were noted or issued prior to the date of this contract by any governmental department, agency or bureau having jurisdiction as to conditions affecting the Premises and all liens which have attached to the Premises prior to the Closing pursuant to the Administrative Code of the City of New York, if applicable, shall be removed or complied with by Seller. If such removal or compliance has not been completed prior to the Closing, Seller shall pay to Purchaser at the Closing the reasonably estimated unpaid cost to effect or complete such removal or compliance, and Purchaser shall be required to accept title to the Premises subject thereto, except that Purchaser shall not be required to accept such title and may terminate this contract as provided in §13.02 if

(a) Purchaser's Institutional Lender reasonably refuses to provide financing by reason thereof or

(b) the Building is a multiple dwelling and either

(i) such violation is rent impairing and causes rent to be unrecoverable under Section 302-a of the Multiple Dwelling Law or

(ii) a proceeding has been validly commenced by tenants and is pending with respect to such violation for a judgment directing deposit and use of rents under Article 7-A of the Real Property Actions and Proceedings Law. All such notes or notices of violations noted or issued on or after the date of this contract shall be the sole responsibility of Purchaser.

§7.02. If the reasonably estimated aggregate cost to remove or comply with any violations or liens which Seller is required to remove or comply with pursuant to the provisions of §7.01 shall exceed the Maximum Amount specified in Schedule D (or if none is so specified, the Maximum Amount shall be one-half of one percent of the Purchase Price). Seller shall have the right to cancel this contract, in which event the sole liability of Seller shall be as set forth in §13.02, unless Purchaser elects to accept title to the Premises subject to all such violations or liens, in which event Purchaser shall be entitled to a credit of an amount equal to the Maximum Amount against the monies payable at the Closing.

§7.03. Regardless of whether a violation has been noted or issued prior to the date of this contract, Seller's failure

to remove or fully comply with the following violations shall not be an objection to title:

(a) any violations of New York City Local Law 5 of 1973, as amended (relating to fire safety in office buildings), if applicable, or

(b) any violations which a tenant is required to remove or comply with pursuant to the terms of its lease by reason of such tenant's use or occupancy. Purchaser shall accept the Premises subject to all such violations without any liability of Seller with respect thereto or any abatement of or credit against the Purchase Price, except that if Purchaser's Institutional Lender reasonably refuses to provide financing by reason of the violations described in (b) above, Purchaser shall not be required to accept the Premises subject thereto and Purchaser shall have the right to terminate this contract in the manner provided in §13.02.

§7.04. If required, Seller, upon written request by Purchaser, shall promptly furnish to Purchaser written authorizations to make any necessary searches for the purposes of determining whether notes or notices of violations have been noted or issued with respect to the Premises or liens have attached thereto.

### Section 8. Destruction, Damage or Condemnation

§8.01. The provisions of Section 5-1311 of the General Obligations Law shall apply to the sale and purchase provided for in this contract.

### Section 9. Covenants of Seller
Seller covenants that between the date of this contract and the Closing:

§9.01. The Existing Mortgage(s) shall not be amended or supplemented or prepaid in whole or in part. Seller shall pay or make, as and when due and payable, all payments of principal and interest and all deposits required to be paid or made under the Existing Mortgage(s).

§9.02. Seller shall not modify or amend any Service Contract or enter into any new service contract unless same is terminable without penalty by the then owner of the Premises upon not more than 30 days notice.

§9.03. If an insurance schedule is attached hereto, Seller shall maintain in full force and effect until the Closing the insurance policies described in such schedule or renewals thereof for no more than one year of those expiring before the Closing.

§9.04. No fixtures, equipment or personal property included in this sale shall be removed from the Premises unless the same are replaced with similar items of at least equal quality prior to the Closing.

§9.05. Seller shall not withdraw, settle or otherwise compromise any protest or reduction proceeding affecting real estate taxes assessed against the Premises for any fiscal period in which the Closing is to occur or any subsequent fiscal period without the prior written consent of Purchaser, which consent shall not be unreasonably withheld. Real estate tax refunds and credits received after the Closing Date which are attributable to the fiscal tax year during which the Closing Date occurs shall be apportioned between Seller and Purchaser, after deducting the expenses of collection thereof, which obligation shall survive the Closing.

§9.06. Seller shall allow Purchaser or Purchaser's representatives access to the Premises, the Leases and other documents required to be delivered under this contract upon reasonable prior notice at reasonable times.

### Section 10. Seller's Closing Obligations
At the Closing, Seller shall deliver the following to Purchaser:

§10.01. A statutory form of bargain and sale deed without covenant against grantor's acts, containing the covenant required by Section 13 of the Lien Law, and properly

4

executed in proper form for recording so as to convey the title required by this contract.

§10.02. All Leases initialed by Purchaser and all others in Seller's possession.

§10.03. A schedule of all cash security deposits and a check or credit to Purchaser in the amount of such security deposits, including any interest thereon, held by Seller on the Closing Date under the Leases or, if held by an Institutional Lender, an assignment to Purchaser and written instructions to the holder of such deposits to transfer the same to Purchaser, and appropriate instruments of transfer or assignment with respect to any lease securities which are other than cash.

§10.04. A schedule updating the Rent Schedule and setting forth all arrears in rents and all prepayments of rents.

§10.05. All Service Contracts initialed by Purchaser and all others in Seller's possession which are in effect on the Closing Date and which are assignable by Seller.

§10.06. An assignment to Purchaser, without recourse or warranty, of all of the interest of Seller in those Service Contracts, insurance policies, certificates, permits and other documents to be delivered to Purchaser at the Closing which are then in effect and are assignable by Seller.

§10.07. (a) Written consent(s) of the Mortgagee(s), if required under §2.03(b), and(b) certificate(s) executed by the Mortgagee(s) in proper form for recording and certifying (i) the amount of the unpaid principal balance thereof, (ii) the maturity date thereof, (iii) the interest rate, (iv) the last date to which interest has been paid thereon and (v) the amount of any escrow deposits held by the Mortgagee(s).
Seller shall pay the fees for recording such certificate(s). Any Mortgagee which is an Institutional Lender may furnish a letter complying with Section 274-a of the Real Property Law in lieu of such certificate.

§10.08. An assignment of all Seller's right, title and interest in escrow deposits for real estate taxes, insurance premiums and other amounts, if any, then held by the Mortgagee(s).

§10.09. All original insurance policies with respect to which premiums are to be apportioned or, if unobtainable, true copies or certificates thereof.

§10.10. To the extent they are then in Seller's possession and not posted at the Premises, certificates, licenses, permits, authorizations and approvals issued for or with respect to the Premises by governmental and quasi-governmental authorities having jurisdiction.

§10.11. Such affidavits as Purchaser's title company shall reasonably require in order to omit from its title insurance policy all exceptions for judgments, bankruptcies or other returns against persons or entities whose names are the same as or similar to Seller's name.

§10.12. Checks to the order of the appropriate officers in payment of all applicable real property transfer taxes and copies of any required tax returns therefor executed by Seller, which checks shall be certified or official bank checks if required by the taxing authority, unless Seller elects to have Purchaser pay any of such taxes and credit Purchaser with the amount thereof.

§10.13. To the extent they are then in Seller's possession, copies of current painting and payroll records. Seller shall make all other Building and tenant files and records available to Purchaser for copying, which obligation shall survive the Closing.

§10.14. An original letter, executed by Seller or by its agent, advising the tenants of the sale of the Premises to Purchaser and directing that rents and other payments thereafter be sent to Purchaser or as Purchaser may direct.

§10.15. Notice(s) to the Mortgagee(s), executed by Seller or by its agent, advising of the sale of the Premises to Purchaser and directing that future bills and other correspondence should thereafter be sent to Purchaser or as Purchaser may direct.

§10.16. If Seller is a corporation and if required by Section 909 of the Business Corporation Law, a resolution of Seller's board of directors authorizing the sale and delivery of the deed and a certificate executed by the secretary or assistant secretary of Seller certifying as to the adoption of such resolution and setting forth facts showing that the transfer complies with the requirements of such law. The deed referred to in §10.01 shall also contain a recital sufficient to establish compliance with such law.

§10.17. Possession of the Premises in the condition required by this contract, subject to the Leases and Tenancies, and keys therefor.

§10.18. Any other documents required by this contract to be delivered by Seller.

### Section 11. Purchaser's Closing Obligations
At the Closing, Purchaser shall:

§11.01. Deliver to Seller checks in payment of the portion of the Purchase Price payable at the Closing, as adjusted for apportionments under Section 12, plus the amount of escrow deposits, if any, assigned pursuant to §10.08.

§11.02. Deliver to Seller the Purchase Money Mortgage, if any, in proper form for recording, the note secured thereby, financing statements covering personal property, fixtures and equipment included in this sale and replacements thereof, all properly executed, and Purchaser shall pay the mortgage recording tax and recording fees for any Purchase Money Mortgage.

§11.03. Deliver to Seller an agreement indemnifying and agreeing to defend Seller against any claims made by tenants with respect to tenants' security deposits to the extent paid, credited or assigned to Purchaser under §10.03.

§11.04. Cause the deed to be recorded, duly complete all required real property transfer tax returns and cause all such returns and checks in payment of such taxes to be delivered to the appropriate officers promptly after the Closing.

§11.05. Deliver any other documents required by this contract to be delivered by Purchaser.

### Section 12. Apportionments

§12.01. The following apportionments shall be made between the parties at the Closing as of the close of business on the day prior to the Closing Date:
(a) prepaid rents and Additional Rents (as defined in §12.03);
(b) interest on the Existing Mortgage(s);
(c) real estate taxes, water charges, sewer rents and vault charges, if any, on the basis of the fiscal period for which assessed, except that if there is a water meter on the Premises, apportionment at the Closing shall be based on the last available reading, subject to adjustment after the Closing when the next reading is available;
(d) wages, vacation pay, pension and welfare benefits and other fringe benefits of all persons employed at the Premises whose employment was not terminated at or prior to the Closing;
(e) value of fuel stored on the Premises, at the price then charged by Seller's supplier, including any taxes;
(f) charges under transferable Service Contracts or permitted renewals or replacements thereof;
(g) permitted administrative charges, if any, on tenants' security deposits;
(h) dues to rent stabilization associations, if any;
(i) insurance premiums on transferable insurance policies listed on a schedule hereto or permitted renewals thereof;

5

(j) Reletting Expenses under §6.02, if any; and

(k) any other items listed in Schedule D.

If the Closing shall occur before a new tax rate is fixed, the apportionment of taxes at the Closing shall be upon the basis of the old tax rate for the preceding period applied to latest assessed valuation. Promptly after the new tax rate is fixed, the apportionment of taxes shall be recomputed. Any discrepancy resulting from such recomputation and any errors or omissions in computing apportionments at Closing shall be promptly corrected, which obligations shall survive the Closing.

§12.02. If any tenant is in arrears in the payment of rent on the Closing Date, rents received from such tenant after the Closing shall be applied in the following order of priority:

(a) first to the month preceding the month in which the Closing occurred;

(b) then to the month in which the Closing occurred;

(c) then to any month or months following the month in which the Closing occurred; and

(d) then to the period prior to the month preceding the month in which the Closing occurred.

If rents or any portion thereof received by Seller or Purchaser after the Closing are payable to the other party by reason of this allocation, the appropriate sum, less a proportionate share of any reasonable attorneys' fees, costs and expenses of collection thereof, shall be promptly paid to the other party, which obligation shall survive the Closing.

§12.03. If any tenants are required to pay percentage rent, escalation charges for real estate taxes, operating expenses, cost-of-living adjustments or other charges of a similar nature ("Additional Rents") and any Additional Rents are collected by Purchaser after the Closing which are attributable in whole or in part to any period prior to the Closing, then Purchaser shall promptly pay to Seller Seller's proportionate share thereof, less a proportionate share of any reasonable attorneys' fees, costs and expenses of collection thereof, if and when the tenant paying the same has made all payments of rent and Additional Rent then due to Purchaser pursuant to the tenant's Lease, which obligation shall survive the Closing.

**Section 13. Objections to Title, Failure of Seller or Purchaser to Perform and Vendee's Lien**

§13.01. Purchaser shall promptly order an examination of title and shall cause a copy of the title report to be forwarded to Seller's attorney upon receipt. Seller shall be entitled to a reasonable adjournment or adjournments of the Closing for up to 60 days or until the expiration date of any written commitment of Purchaser's Institutional Lender delivered to Purchaser prior to the scheduled date of Closing, whichever occurs first, to remove any defects in or objections to title noted in such title report and any other defects or objections which may be disclosed on or prior to the Closing Date.

§13.02. If Seller shall be unable to convey title to the Premises at the Closing in accordance with the provisions of this contract or if Purchaser shall have any other grounds under this contract for refusing to consummate the purchase provided for herein, Purchaser, nevertheless, may elect to accept such title as Seller may be able to convey with a credit against the monies payable at the Closing equal to the reasonably estimated cost to cure the same (up to the Maximum Expense described below), but without any other credit or liability on the part of Seller. If Purchaser shall not so elect, Purchaser may terminate this contract and the sole liability of Seller shall be to refund the Downpayment to Purchaser and to reimburse Purchaser for the net cost of title examination, but not to exceed the net amount charged by Purchaser's title company therefor without issuance of a policy, and the net cost of updating the existing survey of the Premises or the net cost of a new survey of the Premises if there was no existing survey or the existing survey was not capable of being updated and a new survey was required by Purchaser's Institutional Lender. Upon such refund and reimbursement, this contract shall be null and void and the

parties hereto shall be relieved of all further obligations and liability other than any arising under Section 14. Seller shall not be required to bring any action or proceeding or to incur any expense in excess of the Maximum Expense specified in Schedule D (or if none is so specified , the Maximum Expense shall be one-half of one percent of the Purchase Price) to cure any title defect or to enable Seller otherwise to comply with the provisions of this contract, but the foregoing shall not permit Seller to refuse to pay off at the Closing, to the extent of the monies payable at the Closing, mortgages on the Premises, other than Existing Mortgages, of which Seller has actual knowledge.

§13.03. Any unpaid taxes, assessments, water charges and sewer rents, together with the interest and penalties thereon to a date not less than two days following the Closing Date, and any other liens and encumbrances which Seller is obligated to pay and discharge or which are against corporations, estates or other persons in the chain of title, together with the cost of recording or filing any instruments necessary to discharge such liens and encumbrances of record, may be paid out of the proceeds of the monies payable at the Closing if Seller delivers to Purchaser on the Closing Date official bills for such taxes, assessments, water charges, sewer rents, interest and penalties and instruments in recordable form sufficient to discharge any other liens and encumbrances of record. Upon request made a reasonable time before the Closing, Purchaser shall provide at the Closing separate checks for the foregoing payable to the order of the holder of any such lien, charge or encumbrance and otherwise complying with §2.02. If Purchaser's title insurance company is willing to insure both Purchaser and Purchaser's Institutional Lender, if any, that such charges, liens and encumbrances will not be collected out of or enforced against the Premises, then, unless Purchaser's Institutional Lender reasonably refuses to accept such insurance in lieu of actual payment and discharge, Seller shall have the right in lieu of payment and discharge to deposit with the title insurance company such funds or assurances or to pay such special or additional premiums as the title insurance company may require in order to so insure. In such case the charges, liens and encumbrances with respect to which the title insurance company has agreed so to insure shall not be considered objections to title.

§13.04. If Purchaser shall default in the performance of its obligation under this contract to purchase the Premises, the sole remedy of Seller shall be to retain the Downpayment as liquidated damages for all loss, damage and expense suffered by Seller, including without limitation the loss of its bargain.

§13.05. Purchaser shall have a vendee's lien against the Premises for the amount of the Downpayment, but such lien shall not continue after default by Purchaser under this contract.

**Section 14. Broker**

§14.01. If a broker is specified in Schedule D, Seller and Purchaser mutually represent and warrant that such broker is the only broker with whom they have dealt in connection with this contract and that neither Seller nor Purchaser knows of any other broker who has claimed or may have the right to claim a commission in connection with this transaction, unless otherwise indicated in Schedule D. The commission of such broker shall be paid pursuant to separate agreement by the party specified in Schedule D. If no broker is specified in Schedule D, the parties acknowledge that this contract was brought about by direct negotiation between Seller and Purchaser and that neither Seller nor Purchaser knows of any broker entitled to a commission in connection with this transaction. Unless otherwise provided in Schedule D, Seller and Purchaser shall indemnify and defend each other against any costs, claims or expenses, including attorneys' fees, arising out of the breach on their respective parts of any representations, warranties or agreements contained in this paragraph. The representations and obligations under this paragraph shall survive the Closing or, if the Closing does not occur, the termination of this contract.

6

**Section 15. Notices**

§15.01. All notices under this contract shall be in writing and shall be delivered personally or shall be sent by prepaid registered or certified mail, addressed as set forth in Schedule D, or as Seller or Purchaser shall otherwise have given notice as herein provided.

**Section 16. Limitations on Survival of Representations, Warranties, Covenants and other Obligations**

§16.01. Except as otherwise provided in this contract, no representations, warranties, covenants or other obligations of Seller set forth in this contract shall survive the Closing, and no action base thereon shall be commenced after the Closing. The representations, warranties, covenants and other obligations of Seller set forth in §4.03, §6.01 and §6.02 shall survive until the Limitation Date specified in Scheduled D (or if none is so specified, the Limitation Date shall be the date which is six months after the Closing Date), and no action based thereon shall be commenced after the Limitation Date.

§16.02 The delivery of the deed by Seller, and the acceptance thereof by Purchaser, shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations of Seller which are expressly stated in this contract to survive the Closing.

**Section 17.  Miscellaneous Provisions**

§17.01. If consent of the Existing Mortgagee(s) is required under §2.03(b), Purchaser shall not assign this contract or its rights hereunder without the prior written consent of Seller. No permitted assignment of Purchaser's rights under this contract shall be effective against Seller unless and until an executed counterpart of the instrument of assignment shall have been delivered to Seller and Seller shall have been furnished with the name and address of the

assignee. The term "Purchaser" shall be deemed to include the assignee under any such effective assignment.

§17.02. This contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated herein, and all prior agreements, understandings, representations and statements, oral or written, are merged into this contract. Neither this contract nor any provision hereof may be waived, modified, amended, discharged or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.

§17.03. This contract shall be governed by, and construed in accordance with, the law of the State of New York.

§17.04. The captions in this contract are inserted for convenience of reference only and in no way define, describe or limit the scope or intent of this contract or any of the provisions hereof.

§17.05. This contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

§17.06. This contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser.

§17.07. As used in this contract, the masculine shall include the feminine and neuter, the singular shall include the plural and the plural shall include the singular, as the context may require.

§17.08. If the provisions of any schedule or rider to this contract are inconsistent with the provisions of this contract, the provisions of such schedule or rider shall prevail. Set forth in Schedule D is a list of any and all schedules and riders which are attached hereto but which are not listed in the Table of Contents.

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the date first above written.

PURCHASER(S):                                          SELLER(S):

_____        _____

_____        _____

_____        _____

_____        _____

Receipt by Escrowee

The undersigned Escrowee hereby acknowledges receipt of, by check subject to collection, to be held in escrow pursuant to §2.05.

By:_____
      KAIKO CHAN, ESQ

SELLER: ASHAND ENTERPRISES INC.
PURCHASER: ~~JOHN MAVRODIS~~ Ellis Equities LLC
PREMISES: 1114 WARD AVENUE, BRONX, NY

## RIDER TO CONTRACT OF SALE

1)    CONFLICT BETWEEN PRINTED FORM AND RIDER: This rider shall constitute a part of the above described contract and in the event of any inconsistency or ambiguity between the terms and provisions of the printed form of this contract and this rider, then the terms of this rider, then the terms and provisions of this rider shall control.

2)    MERGER CLAUSE: ALL prior statement or understandings, oral or written are merged into this Contract of Sale. .

3)    Delivery of a copy or copies of this contract for review and or execution shall not be construed as a binding offer or agreement to sell.  This contract shall not be binding upon Seller until the final form has been signed by the Seller, a fully executed copy has been delivered to Purchaser and the down payment has been delivered and cleared in the Seller's attorney escrow account.

4)    The acceptance of a Deed by Purchaser shall be deemed full performance and discharge of any agreement and obligation on the part of the Seller to be performed pursuant to the provisions of this Contract, except those, if any, which are herein specially stated to survive the delivery of the deed.

5)    This contract may not be assigned or transferred by the Purchaser without the express written permission of the Seller other than an entity of Purchaser's formation.~~ and control~~.

6)    ALL NOTICES in connection with this contract shall be in writing signed by either party or the attorney for that party and (a) sent to the attorneys for the respective parties by registered or certified mail, return receipt requested, postage prepaid; or (b) delivered in person or by over night courier, with receipt acknowledged.  Each notice mailed shall be deemed given on the third business day following the date of mailing the same and each notice delivered in person or by overnight courier shall be deemed given when delivered.

7)    THIS CONTRACT of sale shall not be effective and binding until the same has been executed by both the Seller and the Purchasers, and copies have been delivered to the respective attorneys for the parties together with the earnest money deposit provided for herein.

8)    It is agreed and understood that no ~~misre~~representation has been made and that no responsibility is assumed by Seller with respect to the continued occupancy of the said premises, or any parts thereof, by any tenant or tenants now in possession.

9)    Promptly after receipt of the title report ordered pursuant to Paragraph 21 of the standard contract, the Purchaser shall also forward a copy of the exception sheet contained in said report and the tax and mortgage information to the attorney for the Seller and notify the attorney for the Seller at least ten days before the date set for closing of objections to title, if any, appearing in such report.  Any attempt by the Seller to cure any objection shall not be construed as an admission by the Seller that such is a right of purchaser to cancel the contract.

10)    Seller shall have the right to rent to a new tenant or tenants any apartments in the Premises, *upon 10 days notice to Purchaser* which are or may become vacant before the date of Closing of title, and Purchaser agrees to accept the Premises subject to any such letting(s), provided the rental(s) received therefor shall not be less than the rental(s) set forth in the Schedule E-Rent Schedule.  Should Seller consent, upon the request of Purchaser, to keep any apartment vacant until the date of Closing of Title, the Purchaser shall pay to Seller, monthly, for the loss of rental incurred thereby, at the rental set forth in the Schedule E-Rent Schedule, from the date of said vacancy up to the date of closing of title.

11)    ~~INABILITY TO CONVEY TITLE:  In the event an examination of title, or rent or other records shall reveal or reflect a state of facts other than those herein set forth and other than those to which the PURCHASER(S) have agreed to take title subject to, the parties agree, that if by reason~~

~~of the foregoing or any other reason whatsoever, except SELLER's willful default,~~ SELLER is unable to deliver to PURCHASER a good and marketable title in accordance with the provisions of this contract, and subject to the matters set forth herein, SELLER shall not be required to bring any action or proceeding or otherwise incur any expense to render the title to the premises marketable, and if PURCHASER shall refuse same, SELLER may rescind this contract, and upon returning to the PURCHASER the sum paid on the signing hereof and the net title company expense for the examination of title to the premises, but not exceeding $500, all further liability on part of the SELLER hereunder shall cease and terminate, and this contract shall be deemed canceled and of no ~~further force and effect, and the SELLER is not liable for any other costs or damages whatsoever.~~

12)     IN ADDITION TO, AND NOT LIMITATION OF, THOSE ITEMS LISTED IN THE PRINTED FORM PORTION OF THIS CONTRACT, THE PREMSIES ARE SOLD AND SHALL BE CONVEYED SUBJECT TO:

A.  Any state of facts an accurate survey may show, provided same dose no render title unmarketable.

B.  Covenants, restrictions, easements, and restrictive agreements and reservations of record, if any, provided the maintenance of existing structures is not prohibited thereby.

C.  Party wall and sewer agreements, if any, of record.      *Minor*

D.  Encroachments and variations from the record line, fences and tax map, of hedges, retaining walls, fences, bay windows, copings, cellar doors, sidewalk elevator and fire escapes.

E.  Rights, agreements, declarations and utility and easements, if any, including, but not limited to, gas, telephone, steam, electric, pipelines, sewer agreements affecting the premises, and to maintain and operate lines, cables, poles, and boxes in, over upon said premises, provided same does not prohibit the present use of the premises.

F.  Laws and Local governmental regulations that affect the use and maintenance of the premises. *provided the maintenance of existing structures and current*

G.  Liens for taxes, water charges and sewer rents for which adjustment is made at closing. *use is not prohibited thereb*

H.  Any judgments of record, liens for unpaid franchise taxes of any corporation in the chain of title to the premises, and liens for estate, inheritance or similar taxes of any person in the chain of title, provided that Purchaser's title company shall be willing to insure Purchaser against collection of the same out of the premises at no additional cost to Purchaser, and lender's attorney does not object.

I.  All notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued by the Departments of Buildings, Fire, Labor Health or Enviormental Protection, or any governmental agency now or hereafter against or affecting the Premises. *provided that Seller shall pay all fines, penalties in connectio*

J.  Any and all sidewalk notices to repair and/or sidewalk violations. *therewith,*

K.  The Certificate of Occupancy on record, if any. *provided the maintenance of existing*

L.  The leases and tenancies listed on Schedule E-Rent Schedule which is attached to this *structures and* contract. *current use is no Prohibited there*

13)    In the event there exists any addition or improvement to the premises which violates easements, conditions, reservations, covenants, restrictions, conditions, or regulations, the existence of such violations shall not be deemed an objection to title provided that a title insurance company will insure that said additions or improvements may remain in their present locations as long as same may stand.

———  ———

14)    Any lien or encumbrance existing on the premises shall not constitute as an objection to title so long as Seller at closing delivers to or deposits with the title company a sufficient amount or such instrument required by the title company to have same discharge or so long as title company is willing to insure title against collection from such lien or encumbrance, *provided this is acceptable to Purchaser's lender.*

15)    ESCROWE CLAUSE: THE PROCEEDS of the down payment check advanced hereunder shall be held in escrow by KAIKO CHAN, Esq. the Seller's attorney, in a NON INTEREST BEARING IOLA account maintained at HSBC, until the closing or sooner termination of this contract.

If, for any reason, the closing does not occur and either party makes a written demand upon

ESCROWEE for payment ∧business thereof, ESCROWEE shall give written notice to the other party of such demand. If ESCROWEE does not receive a written objection from the other party to the proposed payment within ten (10) days after the giving of such notice, ESCROWEE is hereby authorized to make such payment. If ESCROWEE receives a written objection within such ten (10) days period, or if for any other reason ESCROWEE in good faith shall elect not to make such payment, ESCROWEE shall continue to hold such amount until otherwise directed by written instruction from the parties or by order or judgment of a court. However, ESCROWEE shall have the right at any time to deposit the escrowee proceeds with the Clerk of the Supreme Court, New York County, or the Finance Administrator of the City of New York and ESCROWEE shall give written notice of such deposit to the Seller and the purchaser. Upon such deposit being made, ESCROWEE shall be discharged from all obligations and responsibilities hereunder.

The parties acknowledge that ESCROWEE is acting solely as a stakeholder at their request and for their convenience; that ESCROWEE shall not be deemed to be the agent of either of the parties, and that ESCROWEE shall not be liable to either of the parties for any act or omission on its unless taken or suffered in bad faith, in willful disregard of this agreement or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold ESCROWEE harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of ESCROWEE'S duties hereunder, including any attorneys fees incurred by ESCROWEE in defending an action by either Seller or Purchasers, or both, except with respect to actions or omissions taken or suffered by ESCROWEE in bad faith, in willful disregard of this agreement or involving gross negligence on the part of ESCROWEE.

16) DISHONORED CHECKS: In the event that the check given as a down payment and delivered by the PURCHASER to the SELLER upon the execution of this contract is dishonored for any reason by the bank upon which it is drawn, then the SELLER in addition to any other rights and remedies which he may have, may at his own option declare this contract null and void and at an end and thereupon the SELLER shall be relieved and released from all obligations thereunder. PURCHASER also agrees to pay the sum of $100.00 to SELLER's attorney for fees and charges arising from and relating to the dishonored check.

~~17) If any Rents shall be accrued and unpaid at the Closing Date, Purchaser shall at closing reimburse Seller all unpaid rents, but in no event shall unpaid rent adjustment accrued over two months.~~

18) OMITTED

19) In the event Purchaser ~~fails to perform any of the~~ ∧materially defaults under terms of this Contract, Seller may, at its option, retain all of the monies paid on account hereunder as liquidated damages and this contract shall be deemed null and void.

~~20) In the event the closing does not occur as scheduled due to the non-compliance by the~~ Seller of any of the terms, conditions or representations hereof, except for the willful refusal without cause of Seller to convey, the ~~liability of Seller~~ is hereby expressly limited and the Purchaser ~~shall be entitled only~~ to a refund of deposit and actual costs of title examination not to ~~exceed $500.00, if any, without interest and without any other expense or claim~~.

21) Purchaser may not record this contract or any memorandum thereof.

22) All adjustments and apportionments shall be made on the basis of a 30-day month regardless of the number actually in the month of closing.

23) Purchaser has inspected the premises or case an inspection thereof to be made on Purchaser's behalf, prior to the execution of this agreement, and no responsibility is assumed by Seller as to the condition or premises, including all latent and patent defects of any buildings or improvements thereon, now or at time of the delivery of the Deed. Purchaser agrees to purchase said premises, and the improvements thereon, in the physical condition as it may now exist, and

agrees to take the premises " AS IS " , "WHERE IS". In addition, Purchaser shall take title to said premises, subject to any state of facts an examination and physical inspection of the premises may reveal, as to the physical condition of the building and appurtenances on the premises. The Seller has not made, and does not take, any representations as to the physical conditions, income, expenses, operation, or any other matter or thing affecting or relating to the aforesaid premises except as herein specifically set forth. The Purchaser hereby expressly acknowledges that no such representations have been made.

24)     Title to all personal property included in this sale is being conveyed. All personal property is in an "as is" condition and the quantity which exists on the premises unless specified otherwise in this contract of sale.

25)     Within seventy-two (72) hours of the time fixed for closing, the Seller shall permit the Purchaser access to the premises to make an inspection. Said inspection shall be made at reasonable hours and only by prior appointment.

26)     Neither Seller nor any of its agents make any representation concerning the Premises, including but not limited to, the presence or absence of toxic or hazardous substances. Purchaser has been given the opportunity to inspect or have the Premises inspected by others on Purchaser's behalf to determine the existence of any environmental condition at the Premises. With the Closing, the Purchaser assumes all risk of loss, damage or injury which may arise as a result of, or may be in any way connected with, the presence of underground storage tanks, radon gas, asbestos or any othertoxic or hazardous substance in or about the Premises. Purchaser fully and forever releases and discharges Seller, its officers, employees and agents, from any and all claims, liabilities, expenses and damages, whether now or hereafter known, which Purchaser has or may hereafter have against Seller, its officers, employees and agents. This provision shall survive delivery of the Deed and the closing.

27)     In the event closing does not take place within the five (5) boroughs of New York City, Purchaser agrees to pay the seller's attorney the sum of $250.00 as and for the time necessary to attended a closing elsewhere. In no event shall the closing take place outside of the five boroughs of New York City.

28)    ~~If any rents shall be accrued and unpaid at the closing date, Purchaser shall at closing reimburse Seller up to Six months of arrears and Seller shall assign all interest of these arrears to Purchaser.~~

29) SELLER SHALL COOPERATE WITH PURCHASER IN THE ASSIGNMENT OF MORTGAGE IF THE LENDER AGREES TO THE ASSIGNMENT. ~~PURCHASER SHALL CREDIT TO SELLER ½ OF ALL MORTGAGE TAX SAVINGS.~~

30)     SELLER REPRESENTS AND THE PURCHASER IS AWARE THAT THE SELLER FILED BANKRUPTCY. THIS CONTRACT IS CONTINGENT UPON THE APPROVAL AND CONSENT OF THE BANKRUPTCY COURT. *Seller shall make prompt application for and shall use best efforts to obtain same.*

Date:_____

x _____
SELLER

_____
PURCHASER

## RIDER TO CONTRACT

In the event of any conflict between this Rider and the printed form or other rider(s) attached to the Contract of Sale (the "Contract"), the provisions of this Rider shall govern.

1.  The Seller makes the following representations and warranties which are true as of the date hereof and shall be true at Closing, and warrants and covenants as follows:

    (a)  No person, firm, corporation or other entity has any right or option to acquire the Premises, any portion thereof or any interest therein, other than as set forth in the Contract. This paragraph shall survive the Closing.

    (b)  All employees shall be terminated as of Closing, and evidence thereof delivered to Purchaser at Closing. No superintendent or employee shall reside in the Premises as of the date of Closing.

    (c)  There are no Service Contracts affecting the Premises which Purchaser shall be required to assume at Closing, and all contracts for services at the Premises are terminable at will without any penalty.

    (d)  There are no unrecorded instruments or agreements related to the Premises, (other than the tenant leases), or its operation, which will survive the Closing,

2.  Supplementing the Contract:

    (i)  No notice of default or claim of offset has been received by the Seller, Seller's principals or Seller's agents from any tenant;

    (ii)  No tenant has rights of first refusal, purchase options, or renewal rights beyond the stated expiration dates;

    (iii)  No tenant has paid rent for more than one month in advance;

    (iv)  No tenant claims or is entitled to "free" rent, rent concessions, rebates, or rent abatements;

    (v)  Except pursuant to an assignment of leases and rents granted by Seller to its mortgagee, the Seller has assigned none of its rights under the Leases;

    (vi)  No representation or covenant has been made by the Seller to any tenant except as incorporated in their leases and all representations made by the Seller in the Leases and in all other documents, agreements, and instruments relating thereto are true and correct in all material respects;

    (vii)  No tenant has executed or delivered to Seller any promissory notes or other instruments pursuant to which a tenant is indebted to its landlord, and Seller does not own and is not holding any such notes or other instruments;

    (viii) All brokerage commissions due or to become due under any of the Leases and/or renewals, elections not to terminate, extensions, or options

to lease additional space have been full paid or will be paid by Seller prior to Closing.

3. Notwithstanding anything to the contrary contained in the Contract, Seller agrees to pay (or otherwise discharge to the satisfaction of Purchaser's title company) all mortgages, judgments, liens, monetary fines, penalties or charges (ECB or otherwise, and whether or not reduced to a lien against the Premises) assessed against the Premises, even if such charge(s) relates to a violation or condition which the Purchaser agrees to take title subject to. Seller shall, upon demand, furnish Purchaser with written authorization to make the necessary searches of and for municipal violations, etc.

4. a. All of the representations, warranties and agreements set forth in the Contract, all Exhibits and Schedules annexed hereto, or in any letter or certificate furnished to the Purchaser pursuant hereto, each of which is incorporated herein by reference and made a part hereof, shall be true upon the execution of the Contract, and shall be deemed to be repeated on and as of the Closing Date. No such representation or warranty shall omit to state a material fact necessary to make the statements contained therein not misleading.

5. The Seller has not received written notice of any default or breach by the Seller under any of the covenants, conditions, restrictions, rights of way or easements affecting the Premises or any portion thereof; to the knowledge of Seller, no such default or breach now exists; no event has occurred and is continuing which with notice and/or the passage of time would constitute a default thereunder. None of the covenants or restrictions to which Purchaser takes subject provide for forfeiture or reverter in the event of violation thereof, nor do they impose any restrictions on alteration or demolition of the Premises, nor impose any restrictions on rents that may be charged.

6. Seller has been advised that Purchaser or the stockholders, officers or principals on whose behalf Purchaser is acting, may be a licensed real estate broker.

7. Supplementing the Contract, on or prior to the Closing Date, Seller shall deliver to Purchaser (or cause to be delivered to Purchaser) the following documents and other items and the Seller shall take the following actions:

(a) An assignment of any (to the extent that they exist) transferable permits, licenses or warranties with respect to the Premises or the personalty therein;

(b) An assignment of pending Landlord/Tenant actions and proceedings, if any; ~~Purchaser shall credit Seller all arrears after closing if collected. Purchaser shall commence eviction proceedings against all non-payments~~. Purchaser shall

(c) The originals of the Leases and renewal leases (current and expired); rent histories; tenant files; and contracts and all other instruments and records which relate to the operation of the Premises in Seller's possession;

*credit seller all arrears less any expenses incurred of purchaser Purchaser shall give monthly collection report upon demand. This paragraph shall survive closing.*

(d)    Complete and unfettered possession of the Premises subject only to the rights of Tenants under the written tenant leases to be assigned hereunder by Seller to Purchaser;

(e)    A current rent roll, certified to by Seller as being true and correct, together with a schedule of security deposits;

(f)    A certified schedule of rent arrears, prepaid rents, rent escalations and adjustments (and supporting documentation thereto);

(g)    An assignment of all past due rents subject to the provisions of the Contract;

(h)    Intentionally Omitted;

(i)    All keys, plans, and other materials related to the operation of the Premises in Seller's possession;

(j)    Such affidavits as Purchaser's Title Company shall reasonably require in order to omit from its title insurance policy all exceptions for judgments, bankruptcies or other returns against persons or entities whose names are the same as or similar to Seller's name;

(k)    All other documents reasonably required to be delivered by Seller or requested by Purchaser's title insurance company pursuant to any of the provisions of the Contract, or required for the operation of the Premises.

8.    Seller represents that it has not transferred or agreed to transfer any development or air rights pertaining to the Premises, and has no knowledge of any such transfer or agreement to so transfer by any former owner of the Premises.

9.    The Premises will be, at Closing, in compliance with all regulations governing bulk storage of petroleum (if applicable) and Seller shall furnish evidence of same no later than twenty (20) days prior to Closing.

10.    Seller shall pay for all gas, electric, and other public utility charges for which Seller is obligated for the Premises prior to Closing.

11.    Intentionally Omitted.

12.    Prior to the Closing, Seller shall not settle any suit, action or proceeding commenced to enforce the collection of the rents or additional rents due the Seller from the past, present, or future tenants or occupants of the Premises without obtaining the Purchaser's prior consent.

13.  If there is a water meter on the Premises, Seller shall obtain a reading to a date not more than thirty (30) days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.  If the Premises is charged for water and sewer on a frontage basis, Seller shall deliver a Department of Environmental Protection frontage reconciliation, and Seller shall at or prior to Closing make payment of all charges reflected thereon. Seller's obligation to pay all open water and sewer charges to the date of Closing shall survive the Closing of title.

14.  Seller covenants that it will not voluntarily create (by contract, consent or otherwise) between the date of execution of this Contract and Closing hereunder, any easement, covenant, restriction, lien, encumbrance or other defect in, or exception to title to which Purchaser has not given his prior written consent and which is not capable of being satisfied by Closing.

15.  Provided there does not exist an uncured event of default by Purchaser under this Contract, Seller will not enter into any agreements for the sale of the Premises.

16.  The failure of either party to insist upon the full or strict performance of any obligation to be performed by the other party shall not be deemed to be a waiver thereof or of any proceeding or succeeding breach hereof or of any other obligation.  No provision of this Contract may be waived except by a writing signed by the party waiving such provision.

17.  The parties acknowledge that no action required or contemplated in this Contract or any course of dealing between Purchaser and Seller shall make or constitute Purchaser a successor to any of the business or affairs of Seller, and Purchaser is not liable, and has assumed no liability, for any contracts, debts, deposits or any other liabilities whatsoever of Seller, except to the extent, if any, expressly agreed to herein.

18.  Intentionally Omitted.

19.  To the extent that an assessment that is payable in installments becomes a lien on the Premises on or before Closing, the assessment shall be paid in full by Seller at the Closing.

20.  Seller shall deliver the basement apartment presently occupied by the building superintendent, vacant and free and clear of all tenants and occupants and any claims of occupants thereto, and shall deliver at Closing a surrender agreement executed by the building superintendent, in form acceptable to Purchaser and duly notarized.

21.  Notwithstanding anything to the contrary contained in this Contract, Seller acknowledges that Purchaser may elect to purchase the Premises as part of a tax deferred exchange in accordance with the provisions of Section 1031 of the Code (a "1031 Exchange"). At no cost, expense or liability to Seller, Seller shall fully and timely reasonably cooperate with Purchaser in connection with any such 1031 Exchange, including, without limitation, (a) the execution and delivery of certain documents, instruments and contracts requested by Purchaser or any deferred exchange corporation (the "Intermediary") or their respective

counsel and customarily signed by a seller in connection with a 1031 Exchange. Purchaser agrees to defend and indemnify Seller and hold Seller harmless from and against all claims in connection with any such 1031 Exchange.

22.  Seller agrees to cooperate with the Purchaser in its attempt to (at the option of the Purchaser) to obtain an assignment to the Purchaser's lender of any mortgage presently affecting the Premises which the Seller must discharge in accordance with the provisions of this Contract, without cost or charge to Purchaser except that Purchaser shall pay the customary and usual assignment fees and existing mortgagee's attorney fees for the preparation of the assignment documents and attendance, if any, at the Closing. Any interest, principal, prepayment or other charges associated with the mortgage, through the date of receipt of the funds by the mortgagee, shall be paid by the Seller. Seller represents that the outstanding principal balance on the mortgage to be assigned is approximately $4,000,000.00 – based thereon and the resulting mortgage recording tax savings, Purchaser has agreed to give Seller a credit of $10,000.00 at the closing.

23.  Seller represents that there are no union contracts or agreements in effect and Seller has had no communications during its ownership from any labor unions or the State or Federal Labor Relations Board. Seller will not enter into any negotiations or agreements with a labor union between contract signing and Closing.

24.  Seller represents that no work has been done or will be done that might give rise to the filing of a notice of mechanic's lien, materialmen's lien or other lien(s) against the Premises. In the event any such indebtedness occurs or should mechanic's liens be filed, Seller will satisfy such indebtedness and remove any such mechanic's liens. The terms of this paragraph shall survive Closing.

25.  Purchaser may assign its interest hereunder without Seller's consent to a newly formed entity.

26.  Between the date hereof and the date of Closing, Seller shall maintain the plumbing, heating, and electrical systems in working order and repair, and Seller shall continue to provide to the Premises all essential services up to the Closing.

27.  With respect to the commercial tenants, Seller shall deliver no later than ten (10) days prior to Closing, original executed and notarized estoppel certificates dated within not later than (30) days prior to Closing in form reasonably satisfactory to the Purchaser's attorney or to Purchaser's mortgagee (if any). It is a condition to closing that such estoppels shall not state facts which deviate from the data set forth on the annexed rent roll.

28.  Seller has or will register and reregistered as required all apartments and their maximum rents with the Division of Housing and Community Renewal ("DHCR") pursuant to the Omnibus Housing Act of 1983. Between the execution of this Contract, or if required by law of an owner of real property, Seller will re-register the rents for all apartments. Seller will deliver proof of the foregoing and Seller's copy of all the forms required to be

prepared, served and filed, at closing or prior thereto upon five days written notice from Purchaser. None of the said rentals violates existing governmental regulations of guidelines or exceeds the legal maximum rent allowed by law under any rent control or rent stabilization statute or rule. Seller will file any and all forms required by law, of an owner of real property prior to the Closing and deliver copies thereof together with proof of filing to the Purchaser at the closing.

29.    If any rent applications, challenges, orders, protests, complaints or proceedings are pending or exist at the time of Closing Seller will comply with any orders made as a result thereof at Seller's cost and expense. Seller at closing of title, shall give to Purchaser a credit for the cost of complying with any order made as a result of such applications, challenges, orders, protests, complaints or proceedings and for any such applications that are still pending, a sufficient escrow shall be established, in an amount reasonably acceptable to Purchaser, for the purpose of indemnifying the Purchaser and complying with any order or decision that may be entered in connection therewith. Seller shall be responsible for any rent rollbacks or refunds for any period prior to the Closing.

**IN WITNESS WHEREOF,** the parties intending to be legally bound, have set their hands on that date first written above.

**SELLER:**

By: _A. V. Kloppou_

Its: _____

**PURCHASER:**

By: Efstathios Valiotis, member

**1114 WARD AVENUE RENT ROLL**

| APT# | TENANT NAME | ZDE RENT | GFI RENT | OWNERS RENT | OWNERS RENT (2) | LEASE RENT | ROOMS | LEASE EXP. | COMMENTS |
|---|---|---|---|---|---|---|---|---|---|
| 1A | Redacted | 1,100.00 | 1,100.00 | 1,100.00 | | 1,100.00 | 2.00 | N/A | Vacant |
| 1B | | 900.00 | 1,000.00 | 900.00 | | 1,000.00 | 2.00 | 12/31/2013 | Stabilized |
| 1C | | 797.86 | 797.86 | 797.86 | 797.86 | 797.86 | 2.00 | 12/31/2012 | Stabilized |
| 1D | | 1,141.25 | 1,000.00 | 1,000.00 | 1,141.25 | 1,000.00 | 3.00 | 10/14/2012 | Stabilized |
| 1E | | 797.20 | 797.20 | 855.00 | 797.20 | 855.00 | 5.00 | 4/30/2012 | Stabilized |
| 2A | | 1,100.00 | 1,050.00 | 1,100.00 | 1,050.00 | 1,050.00 | 3.00 | N/A | Vacant |
| 2B | | 1,200.00 | 1,100.00 | 1,150.00 | 1,200.00 | 1,100.00 | 3.00 | 6/3/2012 | Stabilized |
| 2C | | 1,452.82 | 1,452.82 | 1,481.87 | 1,452.82 | 1,507.30 | 4.00 | 12/19/2012 | Stabilized |
| 2D | | 1,044.79 | 1,044.79 | 1,065.68 | 1,044.79 | 1,044.79 | 4.00 | 4/30/2013 | Stabilized |
| 2E | | 1,000.00 | 1,000.00 | 1,020.00 | 1,000.00 | 1,000.00 | 3.00 | 4/30/2013 | Stabilized |
| 2F | | 1,000.00 | 1,000.00 | 1,020.00 | 1,000.00 | 1,000.00 | 3.00 | 11/3/2013 | Stabilized |
| 2G | | 1,088.98 | 1,088.98 | 1,088.98 | 1,088.98 | 1,129.82 | 4.00 | 3/30/2012 | Stabilized |
| 2H | | 1,472.49 | 1,472.49 | 1,450.00 | 1,472.49 | 1,450.00 | 4.00 | 10/24/2012 | Stabilized |
| 2I | | 855.81 | 855.81 | 890.04 | 855.81 | 855.81 | 3.00 | 5/31/2013 | Stabilized |
| 2J | | 1,162.10 | 1,162.10 | 1,185.34 | 1,162.10 | 1,162.10 | 3.00 | 10/30/2013 | Stabilized |
| 2K | | 1,135.79 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 2.00 | N/A | Vacant |
| 2L | | 1,200.00 | 1,000.00 | 1,200.00 | 1,000.00 | 1,000.00 | 2.00 | N/A | Vacant |
| 2M | | 630.77 | 630.77 | 652.05 | 630.77 | 630.77 | 2.00 | 12/31/2012 | Stabilized |
| 3A | | 1,162.33 | 1,162.33 | 1,246.60 | 1,162.33 | 1,162.33 | 3.00 | 7/31/2012 | Stabilized |
| 3B | | 1,100.00 | 1,100.00 | 1,200.00 | 1,100.00 | 1,100.00 | 4.00 | 7/31/2012 | Stabilized |
| 3C | | 1,431.50 | 1,500.00 | 1,500.00 | 1,431.50 | 1,500.00 | 4.00 | 3/31/2012 | Stabilized |
| 3D | | 1,400.00 | 1,400.00 | 1,500.00 | 1,400.00 | 1,500.00 | 4.00 | 8/24/2012 | Stabilized |
| 3E | | 998.47 | 998.47 | 1,040.84 | 996.47 | 998.47 | 3.00 | 7/19/2012 | Stabilized |
| 3F | | 1,000.00 | 1,000.00 | 1,250.00 | 1,000.00 | 1,083.32 | 3.00 | 3/31/2012 | Stabilized |
| 3G | | 1,144.57 | 743.42 | 1,167.46 | 1,144.57 | 1,144.57 | 4.00 | 6/30/2012 | Stabilized |
| 3H | | 743.42 | 743.42 | 797.32 | 743.42 | 461.80 | 4.00 | 5/31/2012 | Stabilized |
| 3I | | 1,100.00 | 1,100.00 | 1,100.00 | 1,030.75 | 1,100.00 | 3.00 | 7/31/2014 | - |
| 3J | | 1,200.00 | 1,100.00 | 1,100.00 | 1,200.00 | 1,100.00 | 3.00 | 2/28/2013 | Stabilized |
| 3K | | 1,233.00 | 1,050.00 | 1,050.00 | 1,233.00 | 1,050.00 | 3.00 | 7/30/2012 | Stabilized |
| 3L | | 765.98 | 765.98 | 781.29 | 765.98 | 765.98 | 2.00 | 5/31/2013 | Stabilized |
| 3M | | 1,150.00 | 1,150.00 | 1,250.00 | 1,150.00 | 1,150.00 | 2.00 | 9/30/2012 | Stabilized |
| 4A | | 1,050.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 3.00 | 10/14/2012 | Stabilized |
| 4B | | 1,200.00 | 1,100.00 | 1,200.00 | 1,200.00 | 1,100.00 | 4.00 | 6/24/2012 | Stabilized |
| 4C | | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 | 1,450.00 | 4.00 | 9/24/2013 | Stabilized |
| 4D | | 989.84 | 989.84 | 1,009.84 | 989.84 | 989.84 | 4.00 | 12/31/2012 | Stabilized |
| 4E | | 996.93 | 996.93 | 1,100.00 | 996.93 | 1,100.00 | 3.00 | 10/9/2012 | Stabilized |
| 4F | | 1,150.00 | 1,150.00 | 1,177.75 | 1,150.00 | 1,179.75 | 4.00 | 8/31/2012 | Stabilized |
| 4G | | 1,433.36 | 1,433.36 | 1,433.36 | 1,433.36 | 1,433.36 | 4.00 | 12/31/2012 | Stabilized |
| 4H | | 1,450.50 | 1,500.00 | 1,500.00 | 1,450.50 | 1,500.00 | 4.00 | 10/30/2012 | Stabilized |
| 4I | | 1,141.25 | 1,141.25 | 1,141.25 | 1,141.25 | 1,141.25 | 3.00 | 12/31/2012 | Stabilized |
| 4J | | 670.60 | 670.60 | 697.42 | 670.60 | 487.43 | 3.00 | 5/31/2013 | Stabilized |
| 4K | | 594.23 | 594.23 | 637.31 | 594.23 | 594.23 | 3.00 | 5/30/2012 | Stabilized |
| 4L | | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 2.00 | N/A | Vacant |
| 4M | | 1,100.00 | 1,100.00 | 1,200.00 | 1,100.00 | 1,100.00 | 2.00 | N/A | Vacant |
| 5A | | 1,000.00 | 1,000.00 | 1,100.00 | 1,000.00 | 1,000.00 | 3.00 | 3/30/2012 | Stabilized |
| 5B | | 1,200.00 | 1,100.00 | 1,100.00 | 1,200.00 | 1,100.00 | 3.00 | 11/30/2012 | Stabilized |
| 5C | | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 | 1,500.00 | 4.00 | 3/14/2012 | Stabilized |
| 5D | | 1,358.50 | 1,500.00 | 1,500.00 | 1,358.50 | 1,500.00 | 4.00 | 12/9/2012 | Stabilized |
| 5E | | 1,050.00 | 1,050.00 | 1,100.00 | 1,050.00 | 1,100.00 | 3.00 | 9/9/2012 | Stabilized |
| 5F | | 1,100.00 | 1,100.00 | 1,122.00 | 1,100.00 | 1,100.00 | 4.00 | 6/30/2012 | Vacant |
| 5G | | 1,379.09 | 1,440.00 | 1,440.00 | 1,379.09 | 1,440.00 | 4.00 | 12/9/2012 | Stabilized |
| 5H | | 702.87 | 702.87 | 753.83 | 702.87 | 702.87 | 3.00 | 5/31/2012 | Stabilized |
| 5I | | 1,231.29 | 1,231.29 | 1,200.00 | 1,231.29 | 1,100.00 | 3.00 | N/A | Vacant |
| 5J | | 1,066.94 | 1,066.94 | 1,066.94 | 1,066.94 | 994.07 | 3.00 | 12/31/2013 | Stabilized |
| 5K | | 1,050.00 | 1,100.00 | 1,100.00 | 1,050.00 | 1,100.00 | 3.00 | 7/31/2014 | - |
| 5L | | 1,208.25 | 950.00 | 1,100.00 | 1,208.25 | 950.00 | 2.00 | 10/30/2012 | Stabilized |
| 5M | | 1,141.25 | 1,141.25 | 1,141.25 | 1,141.25 | 1,141.25 | 3.00 | N/A | Vacant |
| 6A | | 1,086.29 | 1,100.00 | 1,100.00 | 1,086.29 | 1,100.00 | 3.00 | 12/9/2012 | Stabilized |
| 6B | | 1,100.00 | 1,100.00 | 1,164.07 | 1,100.00 | 1,100.00 | 4.00 | 7/31/2012 | Stabilized |
| 6C | | 1,453.33 | 1,453.33 | 1,558.70 | 1,453.33 | 1,453.33 | 4.00 | 7/31/2013 | Stabilized |
| 6D | | 1,400.00 | 1,400.00 | 1,428.00 | 1,400.00 | 1,400.00 | 4.00 | 1/30/2014 | Stabilized |
| 6E | | 711.71 | 711.71 | 711.71 | 711.71 | 711.71 | 3.00 | 11/30/2012 | Stabilized |
| 6F | | 1,100.00 | 1,100.00 | 1,122.00 | 1,100.00 | 1,400.00 | 3.00 | 10/4/2013 | Stabilized |
| 6G | | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 | 4.00 | 12/14/2012 | Stabilized |
| 6H | | 1,384.62 | 1,412.31 | 1,412.31 | 1,384.62 | 1,384.62 | 4.00 | 8/19/2012 | Stabilized |
| 6I | | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 3.00 | N/A | Vacant |
| 6J | | 1,001.64 | 1,100.00 | 1,200.00 | 1,001.64 | 1,200.00 | 3.00 | N/A | Vacant |
| 6K | | 1,510.00 | 1,100.00 | 1,175.00 | 1,510.00 | 1,100.00 | 4.00 | N/A | Vacant |
| 6L | | 1,022.50 | 1,022.50 | 1,063.40 | 1,022.50 | 1,022.50 | 2.00 | 3/14/2012 | Stabilized |
| 6M | | 476.27 | 476.27 | 510.80 | 476.27 | 476.27 | 2.00 | 5/31/2012 | Stabilized |
| 6N | | | | | | | - | N/A | Super |
| BSN | | 5,844.00 | 6,320.87 | 6,320.87 | 5,844.00 | 6,056.96 | - | 10/30/2012 | Commercial |
| Sto | | 2,000.00 | 2,300.00 | 2,300.00 | 2,000.00 | 2,000.00 | - | 5/30/2012 | Commercial |
| Sto | | 1,200.00 | 1,200.00 | 1,300.00 | 1,200.00 | 1,275.00 | - | 5/30/2012 | Commercial |

| Monthly | | | | | | |
|---|---|---|---|---|---|
| Residential | 77,520.39 | 76,410.77 | 79,057.27 | 86,557.35 | 76,502.40 |
| Commercial | 9,044.00 | 9,820.87 | 9,920.87 | 9,044.00 | 9,331.96 |
| Total | 86,564.39 | 86,231.64 | 88,978.14 | 95,601.35 | 85,834.36 |

| Annual | | | | | | |
|---|---|---|---|---|---|
| Residential | 930,244.68 | 916,929.24 | 948,687.24 | 1,038,688.20 | 918,028.80 |
| Commercial | 108,528.00 | 117,850.44 | 119,050.44 | 108,528.00 | 111,983.52 |
| Total | 1,038,772.68 | 1,034,779.68 | 1,067,737.68 | 1,147,216.20 | 1,030,012.32 |