BRONSON LAW OFFICES PC  **Hearing Date: November 5, 2014**
Attorneys for Debtor-in-Possession  **Hearing Time: 2:30 PM**
480 Mamaroneck Ave.
Harrison, NY 10528
(914) 269-2530
H. Bruce Bronson

UNITED STATE BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In Re:                                       **Case No. 13-44999**

    Ashand Enterprises, Inc.,        Chapter 11

              Debtor,

-----------------------------------------------------------x

## REPLY TO OBJECTIONS TO PAYMENT/DISBURSEMENTS

To:  **THE HONORABLE CARLA E. CRAIG
     CHIEF UNITED STATES BANKRUPTCY JUDGE:**

### REPLY

1.  H. Bruce Bronson on behalf of Bronson Law Offices, P.C. ("BLO") and himself, makes this reply to Objections to Payment/Disbursements by Karen Veeraswamy ("KV"), estranged wife of the sole officer and director of Debtor. This reply is being provided pursuant to your Order dated October 10, 2014, directing the undersigned to not make any further payments from the Net Proceeds without prior Court approval and to file a response to the Objection Letter filed by Ms. Veeraswamy on or before 10/29/2014 (docket #142).

2.  The undersigned was the disbursement agent for Debtor pursuant to the Debtor's Confirmed Plan and the Court's Order Confirming Liquidating Plan of Reorganization which is attached hereto as **Exhibit A**.

3.  KV contends that after reviewing the status letter of BLO filed on October 2, 2014 (Docket #136), which is attached hereto as **Exhibit B** ("Status Letter"), that BLO engaged in questionable practices. Further KV contends that the Status Letter has "payments/disbursements which were neither authorized by this Court nor brought to this Courts knowledge for prior approval and has payments/disbursement that appear outright fraudulent."

4.  Before addressing the individual disbursements that have been objected to by KV, the undersigned contends that KV has no standing to object to any of the disbursements. KV is not a creditor, shareholder, or officer/director of Debtor. While 11 USC Section 1109(b) is broad it does not encompass KV's status in this bankruptcy. "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter. 11 USC Section 1109(b). Accordingly, KV, an estranged wife, should not be allowed to appear and be heard in this Chapter 11 case, since she is not a party of interest within the meaning of 11 USC Section 1109(b). *See In re Refco Inc.,* 505 F.3d 109 (2nd Cir., 2007), cited by this Court in *In re Suffolk Regional Off-Track Betting Corp.* (Bankr. E.D.N.Y., 2011).

5.  Further, the issues before the Court raised by KV are issues that should be raised in KV's divorce proceedings. KV has repeatedly made unsubstantiated statements in court regarding her estranged husband, Mr. Veeraswamy. It is improper and inappropriate for Mr. Veeraswamy to refute these issues in the bankruptcy court since it is not the proper forum for such matters. However, KV's statements as to Mr. Vereaswamy have been improper and have been potentially detrimental to maximizing the Debtor's estate. It should also be noted that the court in the Veeraswamys' divorce has begun to release funds to both parties. Any disputes over

the propriety of the disbursements should be dealt with in the Veeraswamy divorce action with the State Court Judge presiding over such matters since all creditors of the Debtor with legitimate claims have been substantially paid.

6. Some of the statements made by KV constitute libel and defame BLO. While this Court has found that statements made in litigation are exceptions to libel, the undersigned submits that these statements were not made as part of the pertinent litigation due to KV's lack of standing. This court in *Nicholas v. Oren (In re Nicholas)* (Bankr. E.D.N.Y., 2011) proffered the following as an explanation of the applicable libel law: "Under New York law, 'in the context of a legal proceeding, statements by parties and their attorneys are absolutely privileged if, by any view or under any circumstances, they are pertinent to the litigation.'" *Reserve Solutions Inc. v. Vernaglia,* 438 F.Supp.2d 280, 289-90 (S.D.N.Y. 2006) (quoting O'Brien v. Alexander, 898 F.Supp. 162, 171 (S.D.N.Y.1995) (citing *Grasso v. Mathew*, 564 N.Y.S.2d 576, 578 (App.Div.3d Dep't.1991)). Whether or not these statements constitute libel, they were made by KV without adequate research and without concern for their truthfulness. They were merely designed to inappropriately gain leverage in KV's divorce proceedings[1].

7. The following is an explanation of each contested expenditure:

   A. The payment of $69,000 to "Kommer Bave & Ollman was to settle the judgment held by Stuyvesant Fuel Service Corp. in the amount of $187,418.37, saving $118,418, which inured to the benefit of the estate. See **Exhibit C** attached hereto for a copy of the stipulation and bank check. The undersigned personally hand delivered this bank check to the creditor's law firm in order to ensure that the

---

[1] Counsel for Debtor furnished to KV's divorce attorney a detailed explanation for most if not all of the items that are set forth in her motion on October 6, 2014. KV's counsel stated he would ask her to withdraw her motion. KV had adequate time to review the documents that were provided to reach the conclusion that those points were without merit as to BLO.

3

payment was made within the time frame required by the settlement agreement. Further the stipulation of settlement (as prepared by Kommer Bave & Ollman LLP) has as its caption: *Stuyvesant Fuel Service Corp. vs. Ashand Realty Corp., Vaak Propertieies, LLC, Ashand Enterprises, Inc., Anand Realty Corp. and Velappan Veeraswamy*. I have also attached a copy of the Judgment which shows that the defendants were jointly and severally liable. Accordingly KV's claim as to Stuyvesant Oil is without merit.

B. The payment for Approved Oil along with the discontinuance of the action and General Release are attached hereto as **Exhibit D**. The amount was negotiated from $16,230 to $15,000 by Mr. Veeraswamy. Nothing is owed to Castle Oil.

C. Kaiko Chan's full legal fee was $22,218.75, as was set forth in the fee application (see Docket # 131), and the Court approved $6,843.75 which was for the work performed between the date of filing and the confirmation date for which Mr. Chan was entitled to be paid. There is no impropriety here. Counsel was entitled to be paid for his post-confirmation work, without court approval.

D. As to the $7,500 Escrow that Mr. Chan is holding I have attached a claim by the Buyer for an adjustment. See **Exhibit E**. According to Mr. Chan this adjustment is still being considered and discussed. When the issues that remain are resolved the funds will be released to the Debtor and the buyer as is appropriate.

E. KV raises the issue of self-payment to BLO. While the first payment of $53,422.50, was approved by the Court, two additional bills were presented to Mr. Veeraswamy, who approved them prior to my paying them. There is no impropriety here. In fact BLO was engaged at the rate of $225 per hour for

attorney work. BLO agreed to this low hourly amount as an accommodation to Mr. Veeraswamy. Our normal hourly rates are $350 for my time and $275 for Mr. Nelson's time. The initial retainer was $6,000 and accordingly, I had to carry the costs of the bankruptcy for 9 months. The initial payment covered accumulated costs of the firm. The second payment of $31,240.55 covered the time period of May 11, 2014 through August 11, 2014.  This payment/bill was not subject to bankruptcy court approval. The third payment to my firm was in the amount of $10,487. The total amount paid was $95,741.05. The costs were higher than expected because of the delay in closing. Attached hereto as **Exhibit F** are copies of counsel's bills that were not subject to court pre-approval.

F. KV claims that there was unwarranted delay in paying ZDE. As stated by Dawn Kirby in the Statement in Limited Response to Objections of Karen Veeraswamy docket #138, "I have been in constant contact with Debtor's counsel concerning the broker fee. On October 6, 2014, at Debtor's counsel suggestion, I picked up a check from his office for the full fee, to be held in my escrow account pending entry of the Court's order authorizing payment." There was no delay and KV's claim is without merit. Additionally KV's argument seems to be against self-interest.

G. As to KV's claim that funds were not timely transferred to her attorney John Napolitano quickly enough, the undersigned disagrees. I had significant responsibility as relates to the funds to be disbursed and those funds were disbursed in my opinion as quickly as they could have been. It was my fiduciary responsibility to carefully distribute the funds and I needed to have agreement for

    the dispersal from the Debtor, as well as determining if additional funds would be necessary for the Debtor. Three wires were made to Mr. Napolitano's IOLA Account of $1,000,000 on August 15, 2014; $500,000 on August 27, 2014; and $300,000 on October 1, 2014. At this juncture, with court approval, an additional $150,000 could in the undersigned's opinion be released to Mr. Napolitano.

H. KV claims that the security deposits were somehow not disclosed throughout the bankruptcy. There were no security deposits when Debtor filed its bankruptcy and the principal of Debtor testified to that point at Debtor's 341 meeting. Typically in sales of property of this nature there is an adjustment for the security deposits as a routine closing matter. If there had been security deposits they would have been accounted for in Debtor's DIP account; however, Debtor has advised that there were no deposits. Even new tenant security payments were placed into the Debtor's general account, according to Debtor.

I. As to KV's claim that I did not disclose the adjustment for the security deposits in my letter of July 10, 2014, please note that the letter set forth estimates. Had I been aware of the necessary adjustment and its amount, I would have included it as part of the costs. I have attached the letter of July 10, 2014, as **Exhibit G**.

J. KV claims that the payment to the Super was questionable. The Super was paid a bonus/relocation fee of $9,000, pursuant to the attached agreement. Debtor advised that the agreement to pay the super a bonus was due to the need to keep him on premises through the sale as well as to provide for the moving expenses for a good and loyal employee. Debtor's principal should have full authority to

6

       exercise its judgment in managing the Debtor through the sale and winding down of the business without undue outside influence. See **Exhibit H**.

K. KV also claims that the payment to Honeycell of $30,325.75, was somehow questionable. This payment was for oil deliveries post-filing of the Debtor's bankruptcy. The management company, Midas, arranged to have these oil deliveries and this bill was properly paid. See **Exhibit I** attached. KV is mistaken in her unfounded assumption that Honeycell is not an oil company.

L. KV claims that the Con Edison bill and Midas Management payments should have been included in the monthly operating reports. The bills paid to these entities in question were after closing during a period when quarterly reporting was required, not monthly. The reporting for the last quarter to date is being finalized by our office next week. See **Exhibit J**-Con Edison and **Exhibit K**-Midas bills.

M. No additional bills have been paid since October 1, 2014. An additional bill of $1,200 is owed to Oath Health Tribunal Manager. See attached email-**Exhibit L**.

N. The undersigned counsel has inquired of buyer's counsel as to whether the $35,000, escrow amount can be released. Buyer's counsel said they would ask his client and get back to me. To date, there has been no further response.

8. The undersigned requests that KV's objections be dismissed and Counsel respectfully renews its request to file a motion to close this case; or alternatively for the court to close this case.

    Dated: Harrison, NY
    October 29, 2014

                                               */s/H. Bruce Bronson*
                                               H. Bruce Bronson